Raymond S. ERICKSON

v.

The UNITED STATES.

No. 121–81C.

United States Claims Court.

Jan. 31, 1983.

Maurice F. Biddle, Flint Hill, Va., for plaintiff.

Carmen M. Shepard, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER ON CROSS–MOTIONS OF THE PARTIES FOR SUMMARY JUDGMENT

GIBSON, Judge:

This military pay case, arising out of plaintiff's twice being non-selected for permanent major and his subsequent resignation from the U.S. Air Force on March 31, 1975, comes before the court on cross-motions for summary judgment.

Plaintiff avers that jurisdiction is conferred on this court by virtue of 28 U.S.C. § 1491 (Supp. V 1981) and that the substantive claim is bottomed on other applicable federal laws.

Viewing the facts in the light most favorable to the plaintiff, the court, for the reasons delineated hereinafter, finds that the plaintiff's claim is barred by laches, grants defendant's motion for summary judgment, and concomitantly denies plaintiff's motion for summary judgment.

### FACTS

The submissions of the parties, at this point, establish the following material facts.[1]

Plaintiff began his military career upon enlisting in the Regular Air Force on Sep-

tember 11, 1959, in the grade of airman basic (E–1) for a period of two years. At such time he was 20 years of age and had completed two years of college. On September 21, 1960, he was honorably discharged for the convenience of the Government, upon graduating from the Aviation Cadet program, and was immediately thereafter appointed a second lieutenant on September 22, 1960, in the Air Force Reserve. Plaintiff continued to serve as a commissioned officer in the Air Force Reserve until he was appointed to the Regular Air Force as a second lieutenant on July 11, 1963. Thereafter, plaintiff was progressively promoted through the ranks, over the years, to the temporary grade of major by a 7 December 1970 Selection Board, effective May 1, 1971.

Pursuant to established Air Force policy and procedures, officers are regularly evaluated over a specified period for purposes of determining their qualifications, or lack thereof, for promotion. This evaluation process is initially performed by the immediate superior of the rated officer, who is called the "reporting official," by the execution of an Officer Effectiveness Report (OER). Two additional officers (superior to the incumbent) pass on, *i.e.*, they concur or take exception to, with comments, the recommendation of the "reporting official." The first one is called the "indorsing official" and the second one is called the "additional indorsement."

Between the time of entering extended active duty in September 1960 and his discharge on March 31, 1975, plaintiff was awarded 22 OERs, and one training report. Included in this overall evaluation report was an OER covering the period 20 December 1966 to 1 August 1967 which embraced a tour of duty in a combat environment. This OER, the genesis of plaintiff's problems, was deemed defective because it was based on *only 35 days of observation/evaluation.* An efficacious OER must be premised on at least 90 days of observa-

---

1. The record relied on by the court consists of the parties' pleadings, including but not limited to all motions, cross-motions, oppositions and replies to motions, the administrative record, and defendant's responses to plaintiff's interrogatories.

tion/evaluation, and usually covers a specific period of one year.[2]

It was with this said defective OER in his record that plaintiff was considered for promotion from temporary major to permanent major, by the CY (calendar year) '74 and CY '75 Selection Boards, on August 20, 1973, and July 8, 1974, respectively. Plaintiff was non-selected on *each* occasion. It is further noted that the fact of plaintiff's 1974 non-selection was also before the 1975 Selection Board.

As a consequence of plaintiff's having been twice non-selected for promotion to the grade of permanent major in the Regular United States Air Force, he was separated from duty as a commissioned Regular Air Force officer on March 31, 1975, inasmuch as 10 U.S.C. § 8299(h) (1976) provides that: "A promotion-list officer who has been twice considered and not recommended for promotion to any one regular grade may not again be considered for promotion under this section."

The major premise of plaintiff's petition before this court is that his two non-selections were solely and exclusively attributable to the faulty OER which was considered by the Selection Boards in their deliberations (August 20, 1973 and July 8, 1974) respecting the propriety of recommending him for promotion to permanent major. An LOE, executed by plaintiff's superior, Lt. Col. John D. Donohoo, who directly supervised him for a continuous period of 88 days (April 1, 1967 to June 27, 1967) which was within the period covered by the faulty OER, was not, however, considered by either Selection Board. This LOE characterized plaintiff's combat performance as "always outstanding." Plaintiff argues, therefore, that inasmuch as the faulty OER *was* considered and the laudatory LOE *was not* considered, his service career was not portrayed on a fair and equitable basis before

the Boards, resulting in "probable material error or injustice" by them under Air Force Regulation 31–3.

Subsequent to his second non-selection on July 8, 1974, and prior to his separation from active service as a commissioned Regular Air Force officer on March 31, 1975, plaintiff initiated proceedings to have the alleged material error or injustice corrected by pursuing the issue through various and sundry administrative steps, all of which proved to be unfruitful, with one exception,[3] and as a consequence thereof a petition was filed in this court on March 4, 1981.

In his Petition, plaintiff requests this court for a judgment ordering:

(i) his restoration to active duty status as of March 31, 1975;

(ii) the removal from his records of the two non-selections in 1973 and 1974; and

(iii) such other relief as the court may find just and proper.

Defendant responds with two affirmative defenses in its Answer, as follows:

(i) plaintiff has failed to state a claim upon which relief can be granted; and

(ii) plaintiff's claim is barred by laches.

Since this case is controlled by the doctrine of laches, then, of course, other issues need not be reached. The court will now address that issue.

### DISCUSSION—LACHES

Historically, the doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights. In this connection, it is settled law that to make out a case of laches it is necessary that the proponent prove two elements: (i) lack of diligence by the party

---

2. There is also a rating instrument styled a Letter of Evaluation (LOE) which contains evaluation comments and recommendations with respect to an officer's performance. The LOE differs from the OER *only* in that the former covers a portion of a period (less than 90 days) covered by an OER.

3. On February 27, 1975, plaintiff was successful in causing the Officer Personnel Records Review Board (OPRRB) to void, *ab initio,* the defective OER of December 20, 1966 to August 1, 1967.

against whom the defense is asserted, and (ii) prejudice to the party asserting the defense. *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *Cason v. United States,* 200 Ct.Cl. 424, 431, 471 F.2d 1225, 1229 (1973).

The underlying policy considerations implicit in the law of laches are that the inordinate lapse of time carries with it the memory and often the life of witnesses, the muniments of evidence, and other means of definitive proof. Therefore the law should, through this bar, preclude the enforcement of stale claims particularly where the unreasonable delay is the fault of the claimant and has worked to his benefit, and to the detriment of the proponent.

This court's predecessor, the Court of Claims, in the recent case of *Deering v. United States,* 223 Ct.Cl. 342, 346, 620 F.2d 242, 244 (1980), unequivocally held that "laches is a doctrine applicable to military pay claims in this court[,] *E.g., Brundage v. United States,* 205 Ct.Cl. 502, 504 F.2d 1382 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Cason v. United States (Cason II),* 200 Ct.Cl. 424, 471 F.2d 1225 (1973)[,]" and restated the general role of laches, as explained by Senior Judge Durfee in *Brundage,* 205 Ct.Cl. at 505–06, 504 F.2d at 1384, as follows:

> " 'Laches is a 'fairness' doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury or prejudice to the adverse party. The doctrine of laches is based upon considerations of public policy, which require, for the peace of society, the discouragement of stale demands. It recognizes the need for speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth. As an equitable defense, laches is applied apart from,

and irrespective of, statutes of limitations. . . . ' "
*Deering,* 223 Ct.Cl. at 347, 620 F.2d at 244.

■ It is also settled law that the burden of establishing inexcusable delay *and* prejudice is on the proponent and failure to prove *both* elements is fatal to the establishment of laches. *Costello v. United States,* 365 U.S. at 282, 81 S.Ct. at 543; *Adkins v. United States,* Ct.Cl. No. 420–80 (order entered September 29, 1981). Against this background the court will now test the facts to determine whether defendant has carried its burden of establishing each element of laches.

Following the execution of the faulty OER, for the period December 20, 1966 to August 1, 1967, plaintiff received his first non-selection on April 21, 1969, which related to the position of temporary major. From the time of said April 21, 1969 non-selection, to just prior to his selection as a temporary major on December 7, 1970 (a period in excess of one year and seven months), plaintiff failed to take any corrective action, administratively or judicially.[4]

Plaintiff also took no immediate or timely affirmative corrective action, administratively or judicially, with respect to the defective OER after he was non-selected for permanent major on August 20, 1973, which, in point of time, was more than six years after the issuance of said defective 1967 OER. Eleven and one-half months thereafter (during which period no effort was made to correct said error administratively or through the courts), on July 8, 1974, plaintiff was non-selected for the second time for permanent major. In fact, it was not until December 2, 1974, that plaintiff filed his first application through administrative channels seeking to correct the faulty OER.[5] He thereafter laboriously

---

4. As early as August 1, 1967, the date of issuance of the faulty OER, plaintiff had the right to request that corrections be made thereto by filing an application with the OPRRB or with the Air Force Board for Correction of Military

Records (AFBCMR) pursuant to 10 U.S.C. § 1552 (1976 & Supp. V 1981).

5. This application was denied on December 16, 1974. However, on December 27, 1974, plaintiff applied to the AFBCMR to void the defec-

pursued the administrative approach continuously and exclusively, albeit unsuccessfully (except as noted in footnote 5), through April 1, 1980. During this entire period the AFBCMR considered and denied plaintiff's requests on no less than three (1974, 1977, and 1979) occasions. Additionally, during the aforementioned period there were collateral reviews and recommendations by the Office of the Judge Advocate General and a Special Review Board, none of which were favorable to plaintiff on the merits.

Although plaintiff received his final adverse ruling from the AFBCMR on or about April 1, 1980, it is interesting to note that he did not file a cause of action in this court until more than 11 months thereafter, on or about March 4, 1981. This circumstance is enlightening particularly in view of the fact that plaintiff was represented by counsel, at least, through most of the administrative stages.

From the foregoing litany of facts, the following pertinent points, relevant to the issue of the applicability of laches, are emphasized:

(i) plaintiff instituted suit in this court approximately 27 days before the six year period of limitations expired;

(ii) plaintiff could have instituted a mandamus action in the United States District Court in 1967 following the issuance of the defective OER. However, notwithstanding the, fact that in military pay cases the exhaustion of administrative remedies is permissive, he waited more than 13 years before filing suit in any court and more than five years and 11 months expired from the time at which he could have filed suit in this court;

(iii) while plaintiff received the defective OER on August 1, 1967, and was non-selected for temporary major on April 21, 1969, more than seven years passed before he filed even his

first administrative application (December 2, 1974) to correct said error; and

(iv) in fact, from the issuance of the defective OER on August 1, 1967, plaintiff took over 12 years to exhaust his administrative remedies (April 1, 1980) before initiating suit in this court.

Plaintiff contends that he initially discovered on October 9, 1974, that the December 20, 1966 to August 1, 1967 OER was defective; and that after confirming said fact he filed his initial application with the Board early in December 1974, with subsequent applications for reconsideration filed in June 1977 and December 1979. He claims therefore that he "was indeed diligent and timely in his request for an administrative remedy." In support of his position that the delay, if any, was *not* inexcusable, plaintiff relies on *Cason v. United States,* 200 Ct.Cl. at 432, 471 F.2d at 1229–30, for the proposition that a plaintiff is not to be penalized for a timely and diligent exhaustion of administrative remedies before bringing suit.

Even assuming *arguendo* that plaintiff may not have known for certain until October 9, 1974, that the December 20, 1966 to August 1, 1967 OER was defective, such fact should not operate here to invoke the grace period for administrative relief afforded by *Cason* prior to bringing suit in this court. To find support in *Cason* plaintiff must show that he was timely and diligent in exhausting his administrative remedies before bringing suit. Reasonable inferences deducible from the record here belie such a conclusion; thus, *Cason* holds no comfort for plaintiff. This is particularly true inasmuch as it was plaintiff's own failure to carefully and diligently scrutinize the defective OER which caused the inexcusable delay. At the very latest, plaintiff's non-selection for temporary major by the April 21, 1969 Selection Board [6] should

---

tive OER and it was in fact voided on February 27, 1975.

**6.** In Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross Motion for Summary Judgment, at p. 2, counsel incorrectly states, in attempting to distinguish *Adkins v. United*

have alerted him to possible errors in his record. Indeed, plaintiff admitted in his brief to the AFBCMR dated March 22, 1975, that upon being notified of that non-selection "I was informed that the 1 August 1967 combat OER was the significant factor towards this non-selection .... " Moreover, plaintiff's counsel asserts in the pleadings that "it is true Plaintiff could have and undoubtedly did review his OER file (Selection Folder) in the period 1967–1974.... " [7]

■ It is the court's view, given the foregoing admissions by plaintiff, that he should have looked into and challenged the defective OER at least no later than April 1969. However, he *waited more than 7 years* from the initial rendition of the defective OER and more than five and one-half years from his non-selection as a temporary major before instituting his first administrative appeal (December 2, 1974) which continued for a period in excess of five years through April 1, 1980. This record establishes that more than 12 years passed from the point of the rendition of the defective OER and the exhaustion of his administrative remedies.

The pronouncement in *Adkins v. United States,* Ct.Cl. No. 420–80 (order entered September 29, 1981), a strikingly similar case, is apropos here:

> As a technical matter, plaintiff had no cause of action in this court until his separation on March 30, 1975. He could, however, have brought a mandamus action in district court before that date to challenge his record and passovers. Further, as early as 1962, when the first contested OER was rendered, plaintiff could have applied to the OPRRB or to the AFBCMR for correction of it.

Moreover, even following the conclusion of the protracted administrative proceedings on April 1, 1980, it was not until March 4, 1981, *i.e.,* more than 11 months later, before plaintiff filed his suit in this court. Indeed, the Court of Claims has held that, with a showing of sufficient prejudice, a delay of merely 11 months was enough to invoke the doctrine of laches in *Norris v. United States,* 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136 (1921), *aff'd,* 55 Ct.Cl. 208 (1920); *see also Deering,* 223 Ct.Cl. at 351, 620 F.2d at 246. Here, since plaintiff in fact had notice, or through the exercise of due diligence should have had notice, of his defective OER as early as late 1967, the disposition of this case must be controlled by *Adkins,* Ct.Cl. No. 420–80 (order entered September 29, 1981), in which the court further stated:

> Where on notice of his claim and where plaintiff could have but failed to bring suit, he may be charged with periods of inexcusable delay even though such periods occurred prior to the accrual of the claim for limitations purposes.

Plaintiff attempts, nevertheless, to justify his tardiness in filing his application with the Correction Board (a period in excess of seven years) and his unreasonable delay in filing suit by asserting that:

> For Defendant now to embrace those seven waived years as his own and claim laches because of them, is sophism of the first order, especially since Plaintiff's cause of action in this Court could not have come into being until March 31, 1975, the day he left active duty.

It is sufficient to say that the apparent waiver by the Board permitting plaintiff to file an administrative application four years *after* the general three-year period of limitation [8] had run does not vitiate an untimely and non-diligent assertion of administrative remedies or the failure to file a timely appropriate action in the United States Dis-

---

*States,* Ct.Cl. No. 420–80 (order entered September 29, 1981), from the case at bar, that "here Plaintiff was never passed over for temporary Major.... "

7. *See* p. 5 of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment.

8. 10 U.S.C. § 1552(b) (1976) provides a three-year period of limitation, from discovery of the error or injustice, on the filing of applications for correction of military records. However, in the interest of justice, the board may waive said three-year limitation, which was done in this case.

trict Court or in the predecessor to this court.

The record is, therefore, persuasive and compelling that this is a stale demand and that plaintiff unreasonably and inexcusably delayed in the commencement of this litigation.

Finally, to prevail under the doctrine of laches, the defendant, of course, must establish that it was prejudiced by the protracted delay. In this connection, the defendant asserts that if plaintiff prevails, it would be liable for back pay at the grade level of major for services not actually rendered. The *Adkins* case teaches under such circumstances that "it is evident that defendant would be prejudiced by plaintiff's recovery for it would have to pay for the many years he rendered no service to defendant. . . ." There are further creditable grounds for finding prejudice to the defendant in that the Government's defense has apparently been impaired by the belated prosecution of plaintiff's claim. In this connection, the former Court of Claims stated in *Brundage,* 205 Ct.Cl. at 510, 504 F.2d at 1387, that:

> "The search for truth is always imperiled with the passage of time. Memories fade and documentary evidence is sometimes lost or destroyed."

This is undoubtedly the case here to the end that the passage of time would adversely effect the presentation of the Government's case and would be primarily attributable to the conduct of plaintiff. Also, this is precisely the type of case that our predecessor court envisioned in *Brundage* as altering the usual burden on the defendant of showing prejudice:

> "Some showing of prejudice by the defendant should be made for it to prevail under the doctrine, although 'the longer the delay the less need there is to search for specific prejudice and the greater the shift to plaintiff of the task of demonstrating lack of prejudice.' "

*Id.* at 509, 504 F.2d at 1386 (citing *Cason,* 200 Ct.Cl. at 431, 471 F.2d at 1229).

Plaintiff has not satisfied his burden of going forward with the evidence and showing lack of prejudice.

## CONCLUSION AND ORDER

IT IS THEREFORE ORDERED, upon consideration of the pleadings, the motions, the briefs, the exhibits, and the administrative record, but without oral argument, that defendant's motion for summary judgment is granted; that plaintiff's cross motion for summary judgment is denied; and that the petition is dismissed with costs to the prevailing party.

