David S. PEPPER, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 547–80C.

United States Claims Court.

Aug. 26, 1985.

Jack E. Carter, Fayetteville, N.C., attorney of record, for plaintiff.

John S. Groat, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, for defendant.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

REGINALD W. GIBSON, Judge:

In this military pay case, the plaintiff, former United States Air Force Captain David S. Pepper, seeks, *inter alia,* money damages from the government comprised of back pay and allowances arising from an alleged wrongful active duty discharge. Plaintiff was discharged on February 29, 1980 pursuant to 10 U.S.C. § 8303 (1976 and Supp. IV) after having been twice passed over for promotion to the regular grade of permanent major.[1] Plaintiff contends that his non-selections were the result of four defective Officer Effectiveness Reports (OERs),[2] in his file at the time,

---

1. 10 U.S.C. § 8303(d)(3) (1976 and Supp. IV) provides:

(d) A deferred officer who is not recommended by the next selection board considering officers of his grade and promotion list shall—

. . . . .

(3) ... be honorably discharged on such date as may be requested by him and approved under regulation to be prescribed by the Secretary of the Air Force....

A "deferred officer" is a "promotion-list officer considered for promotion to the grade of captain, major, or lieutenant colonel under section 8299 of this title, but not recommended for promotion." 10 U.S.C. § 8303(a) (1976 and Supp. IV).

2. Before the AFBCMR, plaintiff's claim was based on a challenge to four OERs, *i.e.,* September 28, 1974; October 31, 1975; October 31, 1976; and October 31, 1977. *See* AFBCMR, Record of Proceedings, at 1. In his petition here, plaintiff challenged specifically by name only one OER, *i.e.,* the September 29 [sic], 1974

report. *See* Plaintiff's Petition at 2. At oral argument, however, plaintiff conceded there was no longer a challenge to the September 28, 1974 OER, but that the 1975, 1976, and 1977 OERs were still in issue. We have proceeded on the basis of the record as established before the AFBCMR, and to the extent these factual changes are relevant, they shall be noted. *See infra,* notes 8–9.

An OER, or Officer Efficiency Report, is the Air Force form filled out pursuant to the Air Force Officer Evaluation Program. The information contained in this form is the primary, although not the exclusive, basis upon which officers are considered for promotion. During the period of plaintiff's challenged OERs, one rating system was employed up to 1974, and another was in effect thereafter. The following description of the two programs is taken from the stipulation by the parties:

Up to and including the time the September 1974 OER was rendered, the Air Force employed an OER rating system based upon a

which were invalid based on both procedural irregularities by the rating officers, and certain inherently prejudicial aspects of the Air Force officer rating procedures. In addition, plaintiff has asked this court to order his reinstatement to active duty and his promotion to the grade of temporary, and then to permanent major as of the time he would have been promoted had he been fairly and accurately rated.

In response, defendant has argued that plaintiff's claim, which allegedly accrued in 1974, is barred by the equitable doctrine of laches. On the merits of plaintiff's claim, defendant has asserted that the decision of the Air Force Board for the Correction of Military Records (AFBCMR), which denied plaintiff's requested relief below, should be affirmed by this court in that it was neither arbitrary, capricious, nor unsupported by substantial evidence. Defendant requests a similar affirmation with respect to plaintiff's alleged illegality of the Air Force officer rating procedures.

Jurisdiction for this claim has been noted pursuant to 28 U.S.C. § 1491 (1982). Having heard oral argument on the parties' cross motions for summary judgment, and viewing the facts in the light most favorable to plaintiff, defendant's motion is hereby granted and plaintiff's claim is barred by the doctrine of laches. Likewise, plaintiff's cross motion is hereby denied.

## FACTS

Upon review of the record as developed during plaintiff's proceedings before the AFBCMR, as well as a stipulation[3] by the parties, the following facts have been established. David S. Pepper, the plaintiff, entered the United States Air Force on active duty on February 10, 1965 at the grade of second lieutenant. Following his initial promotion to first lieutenant on July 6, 1970, Pepper was progressively promoted to the permanent, regular grade of Captain on February 10, 1972. At his date of discharge (February 1980), Pepper had received no further promotions. In total, from date of entry to discharge, Pepper had served roughly fifteen years on active duty with the U.S. Air Force.

Following his promotion to the grade of permanent, regular captain in 1972, and prior to his discharge in 1980, Pepper failed five consecutive promotion board reviews for the grade of major. Three of those reviews, October 18, 1976,[4] June 5, 1978

maximum score of 9–4. The first figure (ranging from 0–9) represented the evaluator's assessment of the ratee's duty performance; the second figure (ranging from 0–4) represented an assessment of potential for advancement within the ranks. In addition, the OER contained eight specific factors to be evaluated separately in rating overall performance. One of five verbal ratings, from best to worst, was ascribed to each factor. Finally, the OER provided space in which the evaluator was to offer a descriptive appraisal of the officer's talents and shortcomings.

In late November, 1974, the Air Force instituted a new system of officer evaluation.

The new system was designed to ensure that OER ratings reflected differences in the performance and potential of all Air Force officers by imposing strict quotas on the percentage of officers who could receive the highest scores. More than ninety percent of all Air Force officers ... were in a position whereby only twenty-two percent could receive the highest overall rating and only fifty percent could receive the highest or next-highest rating. The regulation prescribed that these quotas were to be enforced through various control points, specified as major commands or separate Air Force agencies.

The revised OER form designed to implement this system listed ten performance factors, with five possible ratings in each.... In place of the overall dual rating which characterized the 9–4 system, the new OER provided for a single overall rating to be ascribed in one of six unlabeled categories, ranging from highest to lowest.... The new evaluation system relied upon two separate raters, along with a reviewer to assign overall ratings to each officer. In addition to these quantitative ratings, the revised OER contained space for written comments about the officer's job performance and potential for advancement. Def's. Brief at 4–5.

3. In his cross-motion and opposition to defendant's motion for summary judgment, plaintiff "adopts the Defendant's Statement of Facts...." Plain.'s Brief at 3.

4. In his application to the AFBCMR, plaintiff referred to this first selection board passover as "[n]on-selection for promotion to temporary grade of major by Fiscal Year 1976 Board."

and June 4, 1979, resulted in Pepper's non-selection to the grade of "temporary" major. The other two, June 19, 1978 and July 9, 1979, resulted in not only his non-selection to the grade of "permanent" regular major, but to a request for his resignation pursuant to the requirements of 10 U.S.C. § 8303 (1976 and Supp. IV). Pepper was informed that should he fail to resign, he would be involuntarily separated from active duty on February 29, 1980. By refusing to resign, Pepper chose the latter course of action.

Thereafter, on October 9, 1980, Pepper initiated this proceeding in the Court of Claims. After a number of delays including extensions of time, a joint motion by the parties was granted whereby it was ordered on June 11, 1981 that the proceedings in the Court of Claims be temporarily suspended pending remand for administrative consideration by the AFBCMR. Prior to 1981, plaintiff had pursued no administrative review of either his challenged OERs, or his challenged non-selections. Again, however, delays were subsequently encountered due to a substitution of counsel for the plaintiff, and plaintiff's claim was not filed with the AFBCMR until November 1, 1982.

In his petition before the AFBCMR, plaintiff contended:

(1) That four specific OERs for the periods closing September 28, 1974, October 31, 1975, October 31, 1976, and October 31, 1977 were not prepared fairly and impartially, but were "reflective of higher command pressure rather than the independent and fair judgment of the rating and indorsing officers;"

(2) That the Air Force regulations proscribing the "controlled" rating system (AFR 36–10) relating to officer category quotas unfairly discriminated against Pepper by ranking him among officers in his command for evaluation purposes, while ranking his evaluation Air Force-wide for promotion purposes; and

(3) That because it was his unit's command policy to reserve the top two ratings for those officers who had never been passed over and who were perceived to be the officers with a realistic chance for promotion, regardless of duty performance, Pepper was, contrary to AFR 36–10, statistically eliminated from promotion consideration after his first passover for the grade of temporary major.

In sum, plaintiff's claims before the AFBCMR were based on both an alleged unlawful application of Air Force promotion procedures, and the alleged discriminatory nature of the promotion procedures themselves.

The relief Pepper requested before the AFBCMR is identical to that requested in plaintiff's petition here: (1) that the four challenged OERs be voided and removed from his records; (2) that plaintiff's five non-selections for the rank of major be set aside; (3) that plaintiff be reinstated to extended active duty effective March 1, 1980; (4) that he be promoted retroactively

Application for Correction of Military Record, David S. Pepper, 167–34–9150, 1 November 1982, at 2. In the AFBCMR opinion, as well as the pleadings herein, however, this non-selection was referred to as "calendar year" 1976 selection board. The technical difference claimed was that a reference to a "calendar year" selection board versus a "fiscal year" selection board would have signified to the Air Force a review occurring in September of 1975 versus October of 1976. *Id.*

Immediately prior to oral argument, the government filed a supplemental brief in an attempt to clarify what it perceived to be the significance of this difference in language. While that brief, and further explanation at oral argument, *see* transcript of proceedings, U.S.

Claims Court, at 3–5, failed to conclusively establish whether any real misunderstanding, versus merely an error in nomenclature, had occurred, we find this misstatement to be void of any material significance for purposes of laches. For purposes of resolving the laches issue, the exact sequence of OERs and passovers is far less significant than the *outer* time limits of the entire period in which these events occurred. Defendant's misstatement, therefore, does not impact on this concern. If anything, while plaintiff seems to favor the use of the 1975 terminology, we find the impact of placing the first passover for temporary major *before* the challenged 1975 OER actually less favorable to plaintiff's position for purposes of laches. *See infra*, note 9, and accompanying text.

to the grade of major; and (5) that plaintiff be paid all back pay and allowances less adjustment for severance pay from March 1, 1980.

Based upon a finding that insufficient evidence of any wrongdoing or injustice affected Pepper's five non-selections and four challenged OERs, the AFBCMR denied Pepper's requested relief *in toto*. With regard to the 1974 and 1975 OERs, the board found that while a letter from one of plaintiff's indorsers, Lt. Col. Donald E. Sheehan, did allude to certain irregularities in the rating procedures in plaintiff's unit, the dispositive factor accounting for plaintiff's less-than-perfect scores was that plaintiff's unit "was populated by exceptionally fine captains of superior potential." AFBCMR, Record of Proceedings, at 6. Moreover, given that any alleged irregularities "presumably affected the ratings of all the officers in his review group," and that such irregularities were not contrary to the then-current Air Force regulations, the board found the alleged irregularities were not prejudicial to plaintiff's ratings in the 1974 and 1975 OERs. *Id.*

As for the 1976 OER, Lt. Col. Sheehan's letter had posed the question whether Pepper was indeed rated below "perfect" based solely on his 1976 non-selection to the temporary grade of major.[5] As was apparent from Lt. Col. Sheehan's letter, the command policy of Pepper's unit was to reserve the top ratings for officers who had yet to be passed over by previous selection boards. The board noted that if true, such a procedure "would constitute fatal flaws" in the 1976 OER. *Id.* However, because the results of Pepper's 1976 non-selection were not available to the raters of the 1976 OER before the report was finalized, the board found the command unit's challenged procedure unprejudicial as applied to Pepper in 1976.[6] Moreover, given the fact that Lt. Col. Sheehan was not even an indorser on the 1976 OER, nor was there any evidence that the perceived flawed command policy alluded to in Sheehan's letter was actually followed by the designated 1976 raters, the 1976 OER was also determined to have been prepared in a fair and reasonable manner.

Finally, the board quickly disposed of the challenge to the 1977 OER since it was prepared under a different unit than that where Lt. Col. Sheehan was in command. Plaintiff provided no evidence to support what would have been a necessary link to show his new unit was under the same flawed command policy with regard to restricted promotion as was his former unit. Thus, citing the long established presumption of correctness and honesty with regard to military officers in the performance of their duties, the board summarily dismissed the challenge to Pepper's 1977 OER also.

As noted by the AFBCMR, the thrust of plaintiff's case there, as here, "is a challenge to the control rating system in effect during the time in question and its method of application." AFBCMR, Record of Proceedings, at 7. Specifically, plaintiff challenged the system of promotion rating alleging an inherent unfairness whereby plaintiff had to compete for promotion Air Force-wide, yet his individual ratings were given based on his performance vis-a-vis his unit of officers. In denying plaintiff's challenge to the rating system, the board reasoned broadly that the Air Force system

---

5. Lt. Col. Sheehan's letter states:

   [I]f the perception of an officer's chances to be promoted was poor after once, twice, or more times having failed to be promoted, a high rating was not "wasted" on him (the officer being evaluated). Instead, it was given to someone who enjoyed a better chance at promotion.

   It is my opinion that David Pepper fell into this last category.

   AFBCMR, Record of Proceedings, Exhibit A.

6. As discussed *supra*, note 4, the parties attempted to establish that the 1976 non-selection, un-

known to the AFBCMR, actually occurred in 1975. Further, at oral argument, plaintiff attempted to establish that this fact meant the AFBCMR's finding "that the results of this non-selection were not known at the time of the 1976 OER" was false. Having carefully reviewed both the AFBCMR's record, and our own, we find that even *if* we were allowed to proceed based on evidence *not* before the AFBCMR, the plaintiff has not carried his burden with regard to the latter point.

was not inherently unfair, but rather it was a reasonable alternative to the impossible task of rating each officer individually as compared with every other officer in the service. The board also noted the Secretary of the Air Force's wide statutory[7] discretion to promulgate and approve procedures for assessing officer promotion potential. Finally, the board concluded by citing the inherent unfairness which would result from voiding the control system for those officers who had been previously rated and downgraded according to the controlled rating system "merely because of the [superior] calibre of the competition in their particular review group." AFBCMR, Record of proceedings, at 7.

Upon receipt of the AFBCMR record on May 14, 1984, almost two years after remand, cross-motions for summary judgment were filed with the court. Oral argument was held on August 12, 1985.

## DISCUSSION

While this case has raised some rather vexing questions with regard to the Air Force's promotion procedures in general, any discussion of those issues would be inappropriate in view of our primary finding that the plaintiff's claim is barred by laches. Consequently, we do not reach those issues and therefore turn now to address the applicability of the laches doctrine.

The specific issues surfacing before the court with regard to the application of the affirmative defense of laches are: (1) whether plaintiff's complete failure to take any action prior to this lawsuit in October of 1980, following his first challenged OER of 1974, three subsequently challenged OERs, and five consecutive passovers for the grade of major, was sufficient *unreasonable delay* as to support a finding of laches; (2) whether plaintiff's claimed lack of understanding of the significance of each challenged OER and passover, at the time of issuance, amounts to *excusable de-*

*lay* so as to retrieve plaintiff's claim from the bar of laches; and (3) whether the circumstances of plaintiff's delay outlined above have resulted in sufficient *prejudice* to the government as to result in equity favoring a bar to plaintiff's claim. A resolution of these specific issues, along with a general discussion and application of the doctrine of laches, are presented below.

### A. *Background.*

Historically, the equitable doctrine of laches has sought to promote the vigilant pursuit of those claims ripe for adjudication by barring the claims of those who "slumber" on their rights. While, for the jurisdictional purposes of this court, laches takes the form of an affirmative defense, *Brundage v. United States,* 205 Ct.Cl. 502, 506 n. 1, 504 F.2d 1382, 1384 n. 1 (1974); *Foster v. United States,* 3 Cl.Ct. 440 (1983), *aff'd,* 733 F.2d 88 (Fed.Cir.1984), the overriding framework remains one of weighing the equities of each individual case to ensure that injustice does not result to either party. *See Deering v. United States,* 620 F.2d 242, 223 Ct.Cl. 342 (Ct.Cl. 1980) *(en banc).*

Since the holding of the Court of Claims in the *Deering* case, it is clear beyond cavil that laches is a doctrine applicable to military pay cases. *Deering,* 620 F.2d at 244–45. It is also generally held that laches is a doctrine in military pay cases whose period may commence and toll "apart from and irrespective of" the court's statute of limitations, *Brundage,* 504 F.2d at 1384 moreover, it is often a bar to plaintiffs' relief well before the running of the six year statute of limitations. *See Brundage,* 504 F.2d at 1382 (3 years and 8 months); *Cason v. United States,* 471 F.2d 1225, 200 Ct.Cl. 424 (1973) (4 years), *rev'g,* 461 F.2d 784, 198 Ct.Cl. 650 (1972).

In establishing the affirmative defense of laches, the burden of proof rests with the defendant to show that the plain-

---

7. *See* 10 U.S.C. §§ 541–565 (1976 and Supp. IV) (with regard to appointments in the Armed Services); 10 U.S.C. §§ 8281–8314 (1976 and Supp. IV) (with regard to appointments in the Air Force).

tiff's delay in pursuing his claim has been (1) both unreasonable and inexcusable; and (2) has resulted in prejudice to the defendant. *Costello v. United States,* 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *Brundage,* 504 F.2d at 1382; *Erickson v. United States,* 1 Cl.Ct. 163, 165–66 (1983); *Cason,* 471 F.2d at 1229. Reason similarly supports these notions as "an inordinate lapse of time carries with it the memory and often the life of witnesses, the muniments of evidence, and other means of definitive proof." *Erickson,* 1 Cl.Ct. at 166. Defendant's failure to prove both of these elements is, of course, fatal to the establishment of laches.

### B. *Commencement of the Period of Laches.*

Turning first to the proper period with respect to which we measure the reasonableness of plaintiff's delay, defendant has asked this court to consider the time from September 28, 1974, the date of plaintiff's first challenged OER, to October 8, 1980, the day prior to the date the petition was filed in this court.[8] Defendant bases its reason for commencing the laches period at the time of plaintiff's first challenged OER on the concept of sufficient notice, arguing under *Deering,* 620 F.2d at 242, and *Adkins v. United States,* 228 Ct.Cl. 909 (1981), that:

> Where it is shown that plaintiff was on notice of his claim and could have but failed to bring suit, he may be charged with periods of inexcusable delay even though such periods occurred *prior* to the accrual of his cause of action for limitations purposes. (Emphasis added.)

Def's. Brief at 11–12. Technically, while no "suit" could have been brought in this court until plaintiff's discharge, defendant argues for a broader construction of plaintiff's actionable remedies to include both pre-discharge administrative remedies and/or mandamus in the United States District Court. *Id.* at 12.

Plaintiff, on the other hand, whose brief admits that: "[p]laintiff may be charged with periods of *inexcusable* delay even though such periods occurred prior to the accrual of his cause of action for limitations purposes," Plain's. Brief at 4, reversed himself at oral argument and attempted to establish a rule of law that the commencement of the period of laches may not be counted before the date the cause of action accrues in this court. Transcript of proceedings, U.S. Claims Court, at 7–12. For support, plaintiff relied on *Brundage,* 504 F.2d at 1384, and *Jones v. United States,* 6 Cl.Ct. 531 (1984). Plaintiff's reason for such a rule relates to the fact that it is not until separation itself that any money damages, requisite for jurisdiction in this court, arise.

■ As our threshold observation, we emphasize that there is no definitive rule of law that precludes consideration of any delay during plaintiff's period of active duty for purposes of laches. Indeed, to embrace such a rule would be inimical to the clear holding in *Deering,* to wit:

> We can find no reason, and plaintiff has shown us none, why such an across-the-board exemption from the equitable doctrine of laches, always employed on a case-by-case basis, *should be carried out for active duty military personnel.*

*Deering,* 620 F.2d at 244 (emphasis added). Similarly, in *Adkins,* consideration of the time prior to discharge in computing the

---

8. This is the period asserted in defendant's brief in support of summary judgment. However, as noted *supra* note 2, at oral argument plaintiff stated "I think we have failed in all fairness to show that there was any kind of command influence that fell down on that (1974) Officer Efficiency Report." Transcript of proceedings, U.S. Claims Court, at 13. Should we have reached the merits of this case, such a concession would undoubtedly have had special significance. Dealing as we are with an issue of "notice" to commence laches, however, we are to look at the "facts" as established by the AFBCMR. That plaintiff admittedly cannot *prove* a "defect" in the 1974 OER, that rated him "8–3," does not vitiate the obvious prejudicial effect of this low rating for purposes of imputing immediate knowledge to him of its impact on his promotability. Sufficient notice being the issue of importance, as discussed *supra,* we find 1974 remains the appropriate year for consideration.

period of laches was deemed proper. In *Adkins*, the plaintiff had failed to challenge OERs issued years prior to being passed over for promotion seven times. Upon offering no explanation for the delay, the Court of Claims held: "[w]here on notice of his claim and where plaintiff could have but failed to bring suit, he may be charged with periods of inexcusable delay even though such periods occurred prior to the accrual of the claim for limitations purposes." *Adkins*, 228 Ct.Cl. at 911. Based on the foregoing, therefore, any attempt by plaintiff to establish a *per se* bar to consideration of plaintiff's active duty, pre-discharge time delay for purposes of laches must fail.

■ Central to a decision defining the period of laches for purposes of this case is defendant's notion that notice of one's claim, prior to that claim's actual accrual for limitations purposes in this court, may be sufficient to begin the running of the laches period. We agree. As is evident in the quote from *Adkins* above, this proposition finds sound support in Court of Claims precedent, which is binding on this court. Moreover, in the *Erickson* case, this court recently found sufficient for purposes of notice of plaintiff's claim the combination of both his first challenged OER and the following non-selection for promotion— both of which occurred well before discharge during plaintiff's period of active duty. *Erickson*, 1 Cl.Ct. at 167.

The reasonableness of acknowledging that "notice" may exist for purposes of laches, prior to discharge, is also supported by the fact that such plaintiffs are by no means remediless prior to an accrual of an action in this court. As stated by the court in both *Adkins* and *Erickson*, injured active duty plaintiffs have a number of remedies *prior* to discharge. In terms of judicial remedies, active duty plaintiffs have clear standing to institute a mandamus action in the United States District Court following the issuance of even one defective OER. *See Erickson*, 1 Cl.Ct. 167; *Adkins*, 228 Ct.Cl. at 911. Less burdensome are the regular administrative remedies available at both the Officer Personnel Records Review Board (OPRRB) and the Air Force Board for the Correction of Military Records (AFBCMR) levels. Each of these remedies are available upon petitioned request immediately upon the officer's receipt of his copy of the OER and/or non-selection notification. *See id.*

■ Finally, from the standpoint of government policy, the obvious purpose of both mandamus and the permissive administrative procedures is to encourage prompt resolution of personnel claims. Even before discharge and the accrual of a potential money award, on these facts, a litigable "claim" exists. Thus, given such claim, only the *degree* of injury compounds with each subsequently defective OER, and is further exacerbated by the cumulative effect of each subsequent selection board review. The discharge which gave rise to money damages, while triggering threshold jurisdiction in this court, is nothing more than a characteristic of the further maturing of that original efficacious "claim." What makes the recognition of a claim prior to discharge so vital is the potential for mandamus and/or administrative remedies so as to *prevent* the cumulative injury, and very likely the added anxiety, as well as the costs, to defendant occasioned by the tardy pursuit of relief by plaintiff after the fact in this court. Holding plaintiffs accountable for recognizing and avoiding the unreasonable delay that is laches, prior to discharge, promotes this result.

In sum, as a matter of law, we therefore find no bar to adopting for purposes of applying the doctrine of laches the position that a plaintiff may be charged with laches beginning with sufficient notice of his claim—whether that notice occurs prior to the time his claim accrues for purposes of the statute of limitations in this court, or thereafter. The court finds this to be a logical extension of the *Deering* case, and one which comports squarely with the law as settled in *Adkins*. To hold otherwise would be to undermine the clear directive that laches may be, and under equitable circumstances *ought* to be, applied "apart

from and irrespective of" the statute of limitations. *Deering*, 620 F.2d at 244. We now turn to those factual circumstances which have led us to find plaintiff's delay to be unreasonable in this case.

## C. *The Unreasonableness of Plaintiff's Delay.*

■ To avoid laches, it is well settled that a plaintiff *must*, contrary to plaintiff herein, pursue his claim with diligence from the date it accrues. *Brundage*, 504 F.2d at 1384; *Deering*, 620 F.2d at 242. The time asserted by defendant as unreasonable delay is the period from the issuance of the first challenged OER, September 28, 1974, to the day prior to the date of filing in this court, October 8, 1980, a period in excess of six years. Throughout said period (*i.e.*, five years and five months to discharge, and seven months from discharge to the filing for relief in this court), it is undisputed that plaintiff made absolutely no attempt to voice his dissatisfaction with *any* of his OERs, or any of his passovers, by way of seeking an affirmative remedy either administratively or in a district court. Clearly, then, we find the foregoing sufficient to constitute an unreasonable period of delay, since far shorter periods have sufficed for the period of laches. *See, supra.*

## D. *The Inexcusability of Plaintiff's Delay.*

For the continuous six-year period, 1974–1980, plaintiff proffers only a single explanation with respect to his failure to even attempt to generate any corrective action relative to his records. In that connection, plaintiff avers that:

As a practical matter, this court has recognized that officers frequently do not fully understand the import of an Officer Efficiency [sic] Report which is less than maximum, because they have no standards to judge the report against until it is compared, through the selection process, with reports and records of their contemporaries.

Plain.'s Brief at 5. Plaintiff cites us to no cases in support of this position, nor are we aware of any. On the contrary, we note that both the *Foster* and *Jones* cases explicitly hold that the "professed ignorance of the factual basis of a cause of action does not justify delay in filing suit." *Jones*, 6 Cl.Ct. at 533.

■ Under the rating system in effect during the period of plaintiff's first challenged OER, *i.e.*, the uncontrolled rating system, plaintiff received an overall rating of "8–3." Surely plaintiff does not contend he was unaware that this was not *the* top rating obtainable under the "9–4" system. As to the relative significance of this rating, it is also doubtful that plaintiff, then a nine-year veteran of the Air Force who was vying to be promoted to the grade of "major," would not appreciate the necessity of almost consistently perfect scores to assure future promotion. Circumstantially probative of the foregoing is the fact that plaintiff himself had obviously faced this question earlier, given his two previous full promotions, under the same system of rating applicants.[9]

In the *Adkins* case, the predecessor court relied on similar reasoning to support the concept that sufficient notice of one's claim may result in inexcusable delay commencing prior to (rather than at) discharge. Adkins was a former captain in the regular Air Force who was discharged on March 30, 1975, after having twice failed to be

---

9. However, even assuming *arguendo* that the 1974 OER should not, because of plaintiff's concession, be considered for purposes of laches, and that, as discussed *supra* note 4, the 1975 passover *preceded* the 1975 OER, the inexcusability of plaintiff's delay overall is still readily apparent. Taking as our starting point the 1975 passover followed by the low 1975 OER, no matter what plaintiff's knowledge with respect to the performance record of his peers, these aggregate facts, in our view, are prima facie proof of notice of a deficiency. Thus, even on the facts considered in the light most favorably to the plaintiff, commencing with the 1975 passover and the 1975 OER, notice of plaintiff's claim was well established approximately five years before the filing of the petition here; not to mention approximately four years before plaintiff received the second non-selection which led to his ultimate discharge.

selected for promotion to the grade of permanent major. *Adkins,* 228 Ct.Cl. at 910. In denying Adkins' claim for relief based on defective OERs, the court relied in applying laches primarily on Adkins' most egregious period of delay—from his *first* contested OER of 1962 to his first administrative appeal, subsequent to discharge, in 1976. *Id.* at 910–11. During that same period, Adkins had also received three other allegedly defective OERs, and was passed over for promotion to major a total of seven times, the first passover being in 1969. *Id.* Upon a review of these facts, the court stated:

> Plaintiff, however, offers no clear reason for failing to assert his right to a correction of his records until after he had been passed over seven times. *Where on notice of his claim and where plaintiff could have but failed to bring suit, he may be charged with periods of inexcusable delay even though such periods occurred prior to the accrual of the claim for limitations purposes. Deering v. United States,* 223 Ct.Cl. 342, 351 n. 3, 620 F.2d 242, 246 n. 3 (*en banc* 1980); *Plant v. United States,* 650 F.2d 285, 222 Ct.Cl. 682 (1980); *Frommhagen v. United States,* 216 Ct.Cl. 1, 573 F.2d 52 (1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1219, 59 L.Ed.2d 457 (1979). (Emphasis added.)

*Id.* at 911.

The facts of plaintiff's case herein could not be more on point with those receiving primary attention for purposes of laches in *Adkins.* As in *Adkins,* plaintiff here attempted *no* correction of his records prior to shortly after discharge. In both *Adkins* and the case at bar, however, the injury forming the basis of plaintiff's claim accrued many years, many OERs, and many passovers before that initial review was sought. While plaintiff here had the luxury of only five passovers before discharge, as opposed to seven in *Adkins,* it is most significant and reasonable that there, as well as here, notice of the claim was evident from the initial defective OER.

Similarly instructive as to the effect of this plaintiff's delay for purposes of laches is the Court of Claims decision in *Baker v. United States,* 231 Ct.Cl. 779 (1982). There, Baker was a staff sergeant dismissed for improper conduct in October of 1975. The acts of misconduct which were recorded in Baker's file, and which ultimately led to his discharge, however, occurred beginning in 1968. Having failed to challenge those damaging records until 1975, one month before discharge, the court held:

> By *Deering v. United States,* 223 Ct.Cl. 342, 620 F.2d 242 (1980), laches can run against a military claimant while he is on active duty. We think the age that the controversy over Sergeant Baker's fitness for active duty had already attained when he was discharged in 1975 made it incumbent on him to exhaust his BCMR remedy promptly and sue here promptly.... *In a sense, the case was already stale when his cause of action first accrued [in this court.]*

231 Ct.Cl. at 781 (emphasis added).

Like the court in *Baker,* we believe it to be proper and have therefore decided to weigh heavily on the inexcusability of plaintiff's delay in pursuing *any* remedy until his claim was six years old. We note particularly that the court in *Baker,* as in *Adkins* cited above, felt the circumstances of delay sufficiently compelling as to commence the period of laches well before discharge. Moreover, the *Baker* court, in effect, *ended* that period before plaintiff's claim had technically accrued in the Court of Claims. While we do not go that far in the case of the plaintiff at bar, the similarity of complete failure to assert any challenge, to a claim accruing six years before discharge, of which notice of the potential for future cumulative injury was apparent, would certainly not preclude us from similarly barring plaintiff's claim here.

On the basis of law as applied in *Deering, Adkins,* and *Baker,* there can be no doubt that subject plaintiff ought to be, and hereby is, charged with inexcusable

delay in pursuing his claim from the date of the 1974 OER.

### E. *Prejudice to the Defendant.*

The other prong of the laches formula, articulated at the outset, requires that plaintiff's delay in pursuing his claim results in unfair prejudice to the adverse party—in this case the government. *Brundage*, 504 F.2d at 1382; *Costello*, 365 U.S. at 265, 81 S.Ct. at 534. While the ultimate burden of proof is clearly on the defendant, the courts have also reasoned that the longer the delay by a plaintiff in filing suit, the less need there is to search for specific prejudice and the greater the burden on plaintiff to go forward with the evidence to demonstrate lack of prejudice. *Deering*, 620 F.2d at 246; *Brundage*, 504 F.2d at 1386. Although some courts have felt more comfortable with an alternative phraseology which eases the defendant's burden, not mentioning any burden shifting to plaintiff, the point remains that time not only weakens plaintiff's claim, but also defendant's burden to show adverse consequences flowing from an untimely assertion thereof. *Cf. Foster v. United States*, 3 Cl.Ct. 440, 445–46 (J., Nettesheim 1983), *aff'd*, 733 F.2d 88 (Fed.Cir.1984).

Defendant contends that if plaintiff is allowed to recover, "the Government will have to pay for services that were never performed [by plaintiff] and benefits that were never received." Def's. Brief at 13. In support of the theory that such circumstances constitute sufficient prejudice for purposes of laches, defendant cites *Swiger v. United States*, 652 F.2d 70, 227 Ct.Cl. 608, 612 (1981); *Shafer v. United States*, 1 Cl.Ct. 437 (1983); *Beeny v. United States*, 590 F.2d 343, 218 Ct.Cl. 672 (1978), and quotes a long passage from *Deering*, only a portion of which is reproduced here (Def's. Brief at 13–14):

> Although the result of granting plaintiff back pay would not be to require the Army to pay two salaries for the same work, there still would be the prejudicial effect of having to pay for an extended

period a salary for services the Government did not require.

Def's. Brief at 14 *quoting Deering*, 620 F.2d at 246.

█ In response, plaintiff has erroneously based its argument of lack of prejudice on a 17-month delay allegedly the fault of the defendant, which occurred *after* plaintiff filed in this court. Plain's. Brief at 5–6. Clearly, as the period of laches, which has been argued by defendant and adopted by this court, is *prior* to the filing of plaintiff's claim (*i.e.*, 1974–1980), so must be the accrual of prejudice to the government. Thus, whether the government *did* or *did not* delay proceedings in this court subsequent to plaintiff's filing his petition is not relevant to negate any existing prejudice to defendant which may have accrued *prior* to such filing. Plaintiff does not challenge defendant's showing of prejudice on any other grounds.

█ As to the quantum of any prejudice which has emanated from plaintiff's inexcusable delay, the appropriate initial inquiry is the amount of back pay and allowances claimed by plaintiff, should he prevail. *See Foster* 3 Cl.Ct. 440, *aff'd*, 733 F.2d 88 (Fed.Cir.1984). According to plaintiff's complaint, there are two components to the monetary relief requested: (1) active duty pay and allowances at the grade of captain from March 1, 1980, the day following plaintiff's discharge, to the present; and (2) active duty pay and allowance increases occasioned by his promotion to major from the date in 1976 when plaintiff failed his first selection board review for the grade of temporary major, to the present. Clearly, the total of these two items has the potential to be quite costly. Moreover, as in *Deering*, while there is no showing the government will have to pay two salaries for the same work, it is clearly evident as to the "prejudicial effect of having to pay for an extended period a salary for services the government did not require." *Deering*, 620 F.2d at 246; *Swiger*, 652 F.2d 70, 227 Ct.Cl. at 611–12; *Shafer*, 1 Cl.Ct. at 438–39 (1983). Plaintiff's potential monetary award, exacerbated due to

his inexcusable delay, is indeed indicative of substantial prejudice to the defendant, and we so find.

From another perspective, plaintiff's allegations also challenge the competence and veracity of numerous government officials. The assertions of Lt. Col. Sheehan proffered by plaintiff with respect to the perceived "corruption" of the rating procedures at Elmendorf Air Force Base shed doubt on the performance of each of plaintiff's OER raters and indorsers on each challenged OER. It is manifestly unfair to these individuals to require them to explain and justify actions taken as far back as 1974. *Swiger,* 652 F.2d 70, 227 Ct.Cl. at 612; *Brundage,* 504 F.2d at 1387–88. Equity contemplates that they are entitled to defend and explain their acts when their recollections are fresh, and relevant evidence has not disappeared. *Swiger, id.* Such belated challenges to the actions of government officials also strongly supports a finding of prejudice to the government.

## CONCLUSION

In conclusion, we hold therefore that plaintiff's complete failure to take any action prior to this lawsuit in October of 1980, following his first challenged OER of 1974, three subsequently challenged OERs, and five passovers for the grade of major, was sufficient unreasonable and inexcusable delay resulting in prejudice to the government, so as to support a finding that plaintiff's claim is barred by the doctrine of laches. Defendant's motion for summary judgment is, therefore, GRANTED. Plaintiff's cross-motion is DENIED. The Clerk shall dismiss the petition.

IT IS SO ORDERED.