Stephen H. MUSE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 428–86C.

United States Claims Court.

Sept. 30, 1987.

Stephen H. Muse, San Antonio, Tex., pro se.

Howard Lipper, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

REGINALD W. GIBSON, Judge:

### I. *Introduction*

On September 30, 1983, the Army involuntarily discharged the plaintiff, former United States Army Captain Stephen H. Muse, in accordance with 10 U.S.C. § 632 (1982)[1] since he had been passed over twice for promotion to permanent major. Plaintiff alleges that an Officer Effectiveness Report (OER), received by him on May 11, 1979, was the determinative factor in his passovers and his involuntary separation from the service. Therefore, in this military pay case, plaintiff now seeks back pay, appropriate allowances, restoration to active duty, and an order invalidating the 1979 OER. According to plaintiff, the 1979 OER is defective and should be voided because it was not completed as required by appropriate Army regulations, *i.e.*, Personnel Evaluation, Officer Evaluation Reporting System, AR 623–105 (April 1, 1977).

Rather than responding to plaintiff's contentions on the merits, defendant moves for summary judgment and argues that plaintiff's claim, which allegedly accrued in 1979, is barred by the laches doctrine.

Jurisdiction of this claim is premised on 28 U.S.C. § 1491 (1982). Viewing the operative facts in the light most favorable to plaintiff, the defendant's motion for summary judgment is, hereby, denied.

### II. *Facts*

Stephen H. Muse (plaintiff) graduated from the United States Military Academy, West Point, in 1970. At that time he was commissioned as a Second Lieutenant in the Regular Army. Subsequent thereto, the Army sent plaintiff to law school at the government's expense. After graduation therefrom in 1977, plaintiff performed service as an Army attorney attached to the Judge Advocate General. He advanced to the rank of captain and continuously served as an Army attorney in various capacities until his involuntary separation from the Army on September 30, 1983.

During the rating period from April 18, 1978 to April 17, 1979, plaintiff served as an assistant trial counsel while stationed at Fort Sill, Oklahoma. This assignment was plaintiff's first experience as trial counsel. At the close of this period, on May 1, 1979, plaintiff received the customary periodic evaluation, *i.e.*, the Officer Efficiency Report (OER). In the case now before the court, plaintiff challenges certain parts of the OER for this interval, April 1978 to April 1979 (the 1979 OER) as not in compliance with applicable regulations. For the periods prior and subsequent to the foregoing rating period, Muse served in the Legal Assistance Section, later becoming Chief of that section.

In 1981, the Army transferred plaintiff from Fort Sill, Oklahoma, to Fort Sam Houston, Texas. During the interval between May 1979 and April 1982, the selection board passed over plaintiff on two separate occasions by failing to promote him to the rank of temporary major. After

---

1. 10 U.S.C. § 632(a)(1) (1982) provides, *inter alia,* that:

"[E]ach officer of the Regular Army ... who holds the regular grade of captain or major ... who has failed of selection for promotion to the next higher regular grade for the second time ... shall—

\* \* \* \* \* \*

(1) be discharged on the date requested by him and approved by the Secretary concerned, which date shall not be later than the first day of the seventh calendar month beginning after the month in which the President approves the report of the board which considered him for the second time...."

On December 12, 1980, Congress enacted § 632 to replace the repealed § 8303 regarding the effect of an officer's non-promotion. The effective date of the repeal of § 8303 was September 15, 1981. 10 U.S.C. § 8303 (1982).

his second non-selection to temporary major (no dates were proffered by either party as to the time of the foregoing passovers), plaintiff appealed, on or about April 1, 1982, the 1979 OER to the Army Military Personnel Center (MILPERCEN). MILPERCEN forwarded the appeal to the Department of the Army Special Review Board (SRB).[2] During the time the SRB was considering his case, plaintiff was again passed over; this occasion was the first time for promotion to the rank of *permanent* major (again no date was proffered). Thereafter, on or about August 3, 1982, the SRB granted plaintiff partial relief in that an irrelevant comment regarding plaintiff's best area of performance and a critical comment regarding plaintiff's courtroom performance were deleted from ¶ VI(a) and ¶ VII(a) of the OER; nevertheless, the OER itself was not voided. Additionally, the SRB did not find the OER to be "adverse" by definition (AR 623–105, Ch. 5–2h). Plaintiff contends that the failure of the rater/indorser to find the evaluation comments to be "adverse," as defined in the regulations (AR 623–105, Ch. 5–2h), deprived him of procedural due process. This process to which he would have been entitled, if the OER evaluation had been properly characterized as adverse, would have permitted plaintiff to file comments on the unfavorable OER that would accompany it to future selection boards.

On September 10, 1982, plaintiff appealed the SRB decision to the Army Board for Correction of Military Records (ABCMR). In the interval after this appeal to the ABCMR and prior to his involuntary discharge, the selection board passed over plaintiff for the second time and again declined to recommend him for promotion to the rank of permanent major. As a consequence, the Army involuntarily separated plaintiff on September 30, 1983, pursuant to 10 U.S.C. § 632. Currently, plaintiff is serving in the United States Army Reserves and he was promoted to the rank of major effective October 1, 1983.

Following said discharge in September 1983, on several occasions, *i.e.,* October 9, 1984, September 25, 1985, and May 10, 1986, plaintiff inquired *in writing* of the ABCMR seeking to determine the then status of his September 1982 appeal. The ABCMR responded to only one of plaintiff's multiple inquiries. That was by letter dated October 22, 1984, in which the ABCMR notified plaintiff that his appeal had been forwarded to the Army Reserve Components Personnel and Administration Center for "finalization." Following this response, plaintiff allegedly heard nothing further concerning his appeal to the ABCMR until *after* he filed his petition in this court on July 7, 1986.

Convinced that his appeal had been misplaced, plaintiff re-filed his appeal with the ABCMR on July 2, 1986.[3] Defendant contends that the ABCMR made its *final* decision regarding plaintiff's appeal of the SRB decision on November 9, 1983, and that it mailed a copy of the decision to plaintiff on January 17, 1984. In his affidavit, however, plaintiff strenuously disclaims having received this mailing.

Under the impression that no action had been taken to "finalize" the administrative decision in his case, plaintiff filed a petition in this court on July 7, 1986. After commencement of this suit, the Department of Justice forwarded to plaintiff a copy of the original ABCMR memorandum decision on or about August 5, 1986.

### III. *Contentions of the Parties*

The main thrust of plaintiff's argument on the merits is that the 1979 OER is legally defective because the rater did not comply with Army Regulation 623–105, Personnel Evaluation, Officer Evaluation

---

**2.** MILPERCEN screens claims to separate those based on administrative error from those based on a claim for substantive inaccuracy. After categorizing the claims, MILPERCEN handles claims involving administrative error and forwards claims relating to substantive inaccuracy to a Department of the Army Special Review Board for adjudication. ¶ 8–5b, Personnel Evaluation, Officer Evaluation Reporting System, Army Regulation No. 623–105 (May 15, 1977).

**3.** Plaintiff later withdrew the second ABCMR appeal when the Department of Justice forwarded a copy of the decision in the original appeal to him on August 5, 1986.

Reporting System. That is, argues plaintiff, the rater failed to substantiate his numerical score (Superior 67–57 in Part V of the OER regarding demonstrated performance with respect to present duty) consistently with specific examples of demonstrated performance of *present duties* in part VIIa of the OER as required by Army Regulation 623–105, ¶ 4–3f(3) and ¶ 4–3f(4)(b).[4] This section is styled "Comments" and captioned "Narrative Evaluation is Mandatory." ·Further, plaintiff contends that the narrative portions of the challenged OER are adverse despite a "superior" numerical score with regard to the performance of duties during the rating period. As a result of this discrepancy (*i.e.*, high score and disparaging comments, both relating to the performance of his then *present* duties as trial counsel), plaintiff contends that he did not, as required, have the opportunity to comment on the 1979 OER as he would have otherwise under Army Regulation 623–105, ¶ 5–2i.[5] Finally, he argues that since the OER was not completed in accordance with the regulations, it did not afford plaintiff a fair evaluation by the selection board that passed him over for promotion, and precipitated his discharge.

In response to the foregoing, defendant argues that the court should *not* reach the merits of plaintiff's case due to the doctrine of laches. Plaintiff first had notice of a cause of action more than seven years before filing in this court, defendant argues, and urges the court to impute notice to plaintiff of the commencement of a claim/cause of action, for laches purposes, from the date of receipt of the defective

OER, May 11, 1979. During this seven-year, two-month period (May 11, 1979 to July 7, 1986), plaintiff pursued administrative remedies, says defendant, from April 1, 1982 to his discharge date (October 30, 1983), a period of approximately one year and seven months. Defendant concedes that this "delay" was reasonable. But the remaining period of five years and seven months of alleged inactivity defendant breaks into two components for applying the affirmative defense of laches. The first period according to defendant is the two years and 10 months that elapsed from the receipt of the challenged OER (May 12, 1979) to the initiation of an appeal (March 31, 1982) at the SRB. And the second is the period of two years and nine months from the date of plaintiff's discharge (October 1, 1983) to his filing suit in the Claims Court (July 6, 1986). The major point of defendant's argument is that both periods of alleged delay are unreasonable, individually and collectively. This delay would financially prejudice the government, argues defendant, by forcing it to pay for services not received; therefore, defendant insists that laches should bar plaintiff's claim.

## IV. *Issues*

In passing first on defendant's motion for summary judgment, as we must, the court is compelled to decide the following issues: (i) whether plaintiff's delay of nearly three years after receiving the alleged defective 1979 OER and before appealing to the SRB (*i.e.*, from May 12, 1979 to March 31, 1982) was unreasonable and inexcusable; (ii) whether plaintiff unrea-

---

**4.** Army Regulation 623–105, ¶ 4–3f(3) states that: "Extreme ratings (*blocks) must be fully supported by specific comments in part VIIa; generalities and stereotyped comments are not acceptable." Army Regulation 623–105, ¶ 4–3f(4)(b) states: "Superior (67–57) denotes very high quality performance, as well as competence and effectiveness attained by very few officers. This rating must also be justified by comments, clearly illustrative of the rated officer's superiority to contemporaries, in Part VIIa...."

**5.** Army Regulation 623–105, ¶ 5–2i states: "Adverse reports will be referred in writing to the rated officer by the indorser for ac-

knowledgement and/or comment after the indorser has completed his/her portion of the report.... The rated officer will acknowledge receipt of the adverse report and may inclose a comment/statement when he/she believes that the rating or remarks are incorrect."

Army Regulation 623–105, ¶ 5–2h defines "adverse" for the purpose of the OER: "An adverse report is one containing ... (2) A report resulting in an adjectival rating of 'marginal' or 'inadequate' in Part V. (3) A report resulting in an appraisal to 'promote this officer ... behind his/her contemporaries' or 'not promote this officer' in Part VI."

sonably delayed in filing suit in this court on July 7, 1986, after his involuntary discharge on September 30, 1983; and (iii) whether the government was prejudiced by either period of delay. A discussion of the doctrine of laches generally and its application to plaintiff's case follows.

## V. *Discussion*

Before discussing defendant's laches defense, it is appropriate to trace the route of and the posture of plaintiff's case in this court.

 At the time of filing suit in this court on July 7, 1986, plaintiff was under the impression that the ABCMR had yet to issue a decision on his appeal from the SRB determination to the board on September 10, 1982; therefore, plaintiff sought a *de novo* trial. Soon after the filing in this court, defendant forwarded to plaintiff on August 5, 1986 a copy of the final ABCMR decision. The existence of a final ABCMR decision alters the focus of this court on the amended complaint from a *de novo* trial to a review of an administrative board decision. Consequently, were the court to reach the merits, plaintiff would not be entitled to a *de novo* trial. It is established that the court is limited to a review of the administrative decision [6] since it is not within the judicial province to determine who is fit to serve in the armed services. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir.1983) (in review of Army Board for Correction of Military Records, the district court properly applied the substantial evidence standard). The review standard applicable in military pay cases in this court following a Correction Board decision was stated concisely in *Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979), as follows:

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination un-

less he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

Since the Claims Court adopted and is bound by the precedents of the predecessor Court of Claims, the above-cited standard is the applicable review standard which we must follow in military pay cases.

Having clarified the procedural posture, we now turn to defendant's motion for summary judgment. The government contends that the doctrine of laches obviates the plaintiff's right to judicial review of the ABCMR decision, *supra*. In determining the applicability of laches, the government focuses on two time periods, alternatively, during the interval from May 11, 1979, when plaintiff first received the challenged OER, to July 7, 1986, when plaintiff filed his suit in this court. The first alleged unreasonable period to which defendant directs the court's attention for the purpose of laches is the period from May 11, 1979, when plaintiff received the defective OER, to March 31, 1982, the day prior to the day when plaintiff filed his appeal to the SRB. During the 35 months prior to plaintiff's appeal to the SRB (May 11, 1979 to April 1, 1982), the selection board had twice considered and rejected plaintiff for promotion to the rank of temporary major. Plaintiff did not, however, file his appeal with the SRB until after the second passover. When he did file on April 1, 1982, more than two years and 11 months had elapsed from the date he received the OER. Consequently, plaintiff's filing of his appeal to the SRB was outside the two-year period required by the regulations for appealing to the SRB.[7]

---

6. But note, it is error to limit the court's consideration of evidence only to the evidence that was before the board. In cases where the board is not mandated to hold a formal hearing, "*de novo* evidence may be presented to the court." *Nolen v. Schlesinger*, 492 F.2d 787, 788 (5th Cir.1974) (on appeal, court held that lower court

was not restricted to considering only that evidence that was before the Army Board for Correction of Military Records).

7. Army Regulation 623-105, ¶ 8-3a states that "[a]n appeal of a report submitted on DA Form 67-7 [the OER form used in plaintiff's case]

The second interval that defendant points to as constituting sufficient egregious unreasonable delay necessary for laches is the nearly three years between plaintiff's involuntary discharge on September 30, 1983, and the filing of his complaint in this court on July 7, 1986. Contending that the administrative appeal process, previously begun by plaintiff, was complete in January of 1984 when the ABCMR allegedly mailed its decision to plaintiff, which was three months after his involuntary separation, defendant takes the position that plaintiff's failure to file in this court until July of 1986 also comprises a period of unreasonable delay. Further defendant reasons that plaintiff should have known, as an Army attorney, that pursuit of permissive administrative remedies did not preclude him from bringing suit in this court following his discharge. Defendant concedes that the period of approximately one year and seven months plaintiff spent pursuing his administrative remedies before the SRB and the ABCMR (*i.e.*, April 1, 1982 to September 29, 1983, and prior to his involuntary discharge (September 30, 1983)), was reasonable.

The court will examine each of defendant's arguments concerning the alternative time periods identified above and the suitability of the application of the defense of laches to plaintiff's case in ruling on defendant's motion for summary judgment.

### A. Background

As an equitable doctrine, courts have applied laches to preclude the prosecution of stale claims. The courts, in that connection, deny relief on the merits to a plaintiff who unreasonably and inexcusably delays in initiating his cause of action where the delay creates prejudice to the adverse party. *Brundage v. United States*, 205 Ct.Cl. 502, 504 F.2d 1382 (1974) (plaintiff waited a prolonged period between first denial by Air Force Correction Board and appeal for reconsideration and delayed three years and eight months in filing suit after dis-

charge). The fundamental policy underlying the application of the laches doctrine is that it encourages the "speedy vindication" of rights, "so that courts may arrive at safe conclusions as to the truth." 205 Ct.Cl. at 505, 506, 504 F.2d at 1384. In short, laches is applied by analyzing the equities in each individual case to prevent injustice from being visited upon either party. *Pepper v. United States*, 8 Cl.Ct. 666, 671 (1985), *aff'd*, 794 F.2d 1571 (Fed. Cir.1986) (plaintiff's complete failure to "attempt to generate any corrective action relative to his records" for six years found inexcusable).

It is now well settled that laches clearly applies in military pay cases. *Id.* at 671, *citing Deering v. United States*, 223 Ct.Cl. 342, 620 F.2d 242 (1980) (*en banc*). Moreover, the period for laches may begin and toll "apart from, and irrespective of" the statute of limitations for the cause of action involved. *Brundage*, 205 Ct.Cl. at 506, 504 F.2d at 1384. Notice of the cause of action, before the accrual of the claim for statute of limitations purposes, may also initiate the running of the laches period. *Pepper*, 8 Cl.Ct. at 673, *citing, Adkins v. United States*, 228 Ct.Cl. 909 (1981) (consideration of the time prior to discharge in computing period of laches deemed proper).

In the Claims Court, laches takes the form of an affirmative defense. *Brundage*, 205 Ct.Cl. at 506 n. 1, 504 F.2d at 1384 n. 1. The burden of proof is on the defendant to show that the plaintiff (1) delayed in pursuing his claim; (2) that the delay was both unreasonable and inexcusable; and (3) that the delay has resulted in prejudice to the defendant. *Pepper*, 8 Cl.Ct. at 672, *citing, Brundage*, 205 Ct.Cl. at 505, 504 F.2d at 1382. If defendant fails to prove any of the foregoing elements, the defense of laches fails.

■ The court's application of the laches doctrine is tempered by the policy consideration of not discouraging the resort to permissive administrative remedies before filing suit. That is to say, this court will not

---

must be submitted within 2 years of the 'thru' date of the report." The "thru" date on plain-

tiff's report was April 17, 1979.

penalize a reasonable and prompt good faith pursuit of permissive administrative remedies by applying the laches doctrine during the period such administrative remedies are being exhausted. *Cason v. United States*, 200 Ct.Cl. 424, 471 F.2d 1225 (1973) (court vacated its prior decision that defeated plaintiff's claim by laches). *See also Park v. United States*, 10 Cl.Ct. 790 (1986) (laches should not be applied to discourage pursuit of permissive administrative remedies). Thus, to facilitate the "prompt resolution of personnel claims," courts encourage the use of administrative remedies because these remedies are less costly to both sides, they are more expeditious than litigation, and they allow the military the opportunity to correct their own mistakes. *Cason*, 200 Ct.Cl. at 432, 471 F.2d at 1230. *See also Pepper*, 8 Cl.Ct. at 673.

### B. Alleged Inexcusable and Unreasonable Delay in Appealing to the SRB (May 12, 1979 to March 31, 1982)

In arguing that plaintiff inexcusably and unreasonably delayed prior to appealing to the SRB (a period approximating 35 months), defendant maintains that the *receipt* of the 1979 OER was the triggering event that put plaintiff on notice of his claim. To support this position, defendant relies on *Pepper* for the proposition that in "applying the doctrine of laches ... a plaintiff may be charged with laches beginning with sufficient notice of his claim" regardless of whether the notice occurs prior to the accrual of a claim for the purposes of the statute of limitations. *Pepper*, 8 Cl.Ct. at 673. *See also Adkins*, 228 Ct.Cl. 911 (where on notice of claim plaintiff could have, but failed to bring suit, laches will run prior to discharge regardless of whether or not the statute of limitations has commenced to run).

Defendant's argument, on the particular facts at bar, that laches applies to the subject period of time prior to plaintiff's appeal to the SRB is flawed in two respects. First, defendant fails to affirmatively prove delay; and second, the court is not convinced that any time period prior to

filing with the SRB, on these facts, constituted unreasonable and inexcusable delay.

In order to commence the running of the laches period, the defendant *must show when* the plaintiff had sufficient notice of his *claim* in regard to both pre-discharge administrative remedies and/or mandamus in the United States District Court. *Pepper*, 8 Cl.Ct. at 673. In our review of the cases, we find that the courts have found the plaintiff to be on "sufficient notice" of his claim, in order to commence the running of the laches period, according to the varying circumstances of delay inherent in each case. Under this analysis, a prevailing pattern emerges for affixing the time of notice. In cases where the plaintiff has made *no* resort to administrative remedies *prior* to discharge, the courts have found notice to flow from *receipt* of the challenged OER itself. But on the other hand, where the plaintiff has availed himself of administrative remedies *prior* to his involuntary discharge, the courts have imputed notice from the *date* of the plaintiff's first passover at the earliest.

The cases in which the courts have imputed notice from the date of the OER are typified by *Pepper* and *Adkins*. In *Pepper*, the court imputed notice to the plaintiff of the impact of the challenged OER on his possibilities for promotion and commenced the laches period from the date of receipt of that challenged OER. *Pepper*, 8 Cl.Ct. at 672 n. 8. The record in *Pepper* shows that he failed to exercise any of his administrative remedy options prior to his discharge and made no attempt to seek *any* relief until six years after the challenged OERs at which time he filed suit in this court. (Judicial proceedings were then suspended pending AFBCMR review.) There, the court stated that it "decided to weigh heavily on the inexcusability of plaintiff's delay in pursuing *any* remedy until his claim was six years old." *Pepper*, 8 Cl.Ct. at 675 (emphasis in original). *Adkins* is another example of notice imputed from the OER date. The plaintiff in *Adkins* failed to assert his right to a correction of his records until after he had been passed over seven times and until he had been discharged. No appeal by the plain-

tiff to an administrative board occurred until one year *after* discharge and 14 years *after* the first contested OER. *Adkins*, 228 Ct.Cl. at 910. The court, in a similar response to the excessive delay as in *Pepper*, found notice of plaintiff's claim on the date of the first contested OER. *Id.* at 911.

On the other hand, when the plaintiff avails himself of permissive administrative remedies, the courts find that the date of the plaintiff's passover constitutes "sufficient notice." Examples of this approach to the triggering of laches are *Erickson* and *Braddock*. In *Erickson v. United States*, 1 Cl.Ct. 163, 167 (1983), this court found that the combination of the challenged OER and the following non-selection for promotion were adequate to constitute notice. The plaintiff in *Erickson* sought administrative relief prior to his involuntary separation and subsequent to his second non-selection. In *Braddock v. United States*, 9 Cl.Ct. 463, 471 (1986), the court counted plaintiff's notice of claim from notice of the selection board's second decision not to promote him. Therein, Braddock also sought administrative relief prior to his discharge. *Id.* at 465.

The foregoing teaches that the courts impute notice of a claim, for purposes of commencing laches, on the basis of the circumstances of delay present in each case. Where the plaintiff's delay is more egregious, in that there is a complete failure to exercise *any* administrative remedy prior to filing with the court and significant time periods have elapsed, the courts "weigh heavily on the inexcusability of ... delay" (8 Cl.Ct. at 675) and commence the period of laches earlier than where the plaintiff exercises his administrative remedy prior to his discharge.

■ In the case now before the court, plaintiff did exercise his permissive administrative remedy prior to his discharge and subsequent to his second passover for promotion to temporary major. Therefore, notice for the purpose of commencing laches, premised on the foregoing, would *normally* be determined as of the time of his first passover by the selection board, as in

*Braddock* and *Erickson*. Surprisingly, however, the documents filed in support of defendant's motion for summary judgment do not establish *when* plaintiff received notice of his claim for laches purposes because they give no dates for either his first or second passovers occurring prior to plaintiff's filing with the SRB. This is a fatal omission in defendant's proof regarding the commencement of the laches period. While this is unfortunate, it is not for the court to speculate as to the actual date(s) of notice, and we refuse to do so. Therefore, we hold that defendant has failed to show that plaintiff unreasonably and inexcusably delayed in pursuing his claim during subject period. We are required to so hold because defendant's proof is wanting as to the lapse of an unreasonable amount of time from the date of the first (and second) passover(s) to the date of the appeal to the administrative board (SRB).

■ Even assuming *arguendo* that defendant could establish notice to commence laches with a specific passover date, it is not patently clear, on these facts, that such delay by plaintiff prior to appealing to the SRB was either unreasonable or inexcusable. The facts show that plaintiff appealed his 1979 OER on April 1, 1982. This action occurred almost two years and 11 months after the April 17, 1979 "thru" date on the face of the OER. According to the regulations (AR 623–105, ¶ 8–3a) governing appeals to the SRB, plaintiff's appeal was outside the two-year period set to determine timeliness. However, the SRB did, nevertheless, accept plaintiff's appeal and in fact granted him partial relief by deleting an irrelevant comment regarding plaintiff's best area of performance and also a critical comment regarding plaintiff's courtroom performance.

The court finds that the fact that the SRB accepted plaintiff's appeal and reviewed it, on the merits, to be factually significant in determining that laches should not commence to run prior to April 1, 1982, the appeal date to the SRB. We reach this conclusion because precedent indicates that once an administrative board

accepts an appeal (albeit *untimely*) and rules on the contested OER, a later timely appeal cannot be subject to the defense of laches due to the time that ran before the administrative appeal was made. *Riley v. United States*, 221 Ct.Cl. 308, 314, 608 F.2d 441, 444 (1979). *See also Pepper v. United States*, 794 F.2d at 1574. In *Riley*, the plaintiff received defective OERs in 1967 and 1968. But he waited four years and five years, respectively, before seeking administrative relief. He appealed after his first non-selection to the Officer Personnel Records Review Board. That board voided the challenged OERs. Subsequently, he appealed to the Air Force Board for the Correction of Military Records to delete the voided OERs from his record. While awaiting action by that board, the promotion selection board passed over him again. Riley then challenged his resulting involuntary discharge in the Court of Claims. The government defended against this suit on the basis of laches, but the court decided against the government holding that it was within the discretion of these boards to consider plaintiff's untimely administrative appeal. Once the boards had accepted the appeal, the court did not see any reason to challenge the board's decision to entertain the plaintiff's claim. *Riley*, 221 Ct.Cl. at 315, 608 F.2d at 444.

The Claims Court has applied the *Riley* rationale in *Braddock v. United States*, 9 Cl.Ct. at 471, to find that the plaintiff's claim was not barred by laches. In *Braddock*, the plaintiff was involuntarily discharged in 1978 due to two passovers by the promotion selection board. Prior to his discharge, Braddock petitioned the Army Board for Correction of Military Records to challenge six defective OERs that dated back to before 1970, more than eight years before his discharge. The board accepted his appeal and removed four of the six OERs. After his discharge, Braddock brought suit in the Claims Court seeking reinstatement. The court, citing *Riley*, de-

nied the government's defense of laches. *Braddock*, 9 Cl.Ct. at 471.

*Riley* has also been cited with approval by the Court of Appeals for the Federal Circuit. In affirming *Pepper*, the Federal Circuit construed *Riley* where there was a *four-year delay* in seeking administrative review of certain OERs. There the court stated:

> The 4-year delay in petitioning the OPRRB to have the OERs voided *might well have been sufficient grounds for a defense of laches before that board, but once that board accepted and decided the challenge to the OERs, any subsequent timely appeals could not be subject to a defense of laches.*

*Pepper*, 794 F.2d at 1574 (emphasis added).[8] This construction of *Riley* is now binding on this court.

■ Therefore, given the foregoing construction of *Riley*, in the case now before this court, the elapsed time prior to plaintiff's appeal to the SRB, *i.e.*, May 12, 1979 to March 31, 1982, will not be counted against Muse in examining later timely appeals for the application of laches since the SRB accepted his April 1, 1982 appeal and acted on the merits. The question then arises whether plaintiff's subsequent appeal to the ABCMR was timely where the applicable statute provides that an applicant is required to file with the ABCMR "within three years after he discovers the error or injustice." 10 U.S.C. § 1552(b). Before us, the record shows that on September 10, 1982, plaintiff appealed the SRB decision to the ABCMR, one month after the SRB issued its determination on August 3, 1982. In the subsequent Memorandum of Consideration by the ABCMR, dated November 9, 1983, and allegedly mailed to plaintiff on or about January 17, 1984, the board found, among other things, that plaintiff's appeal was untimely. In short, its conclusion is that since Muse must have filed his application with the ABCMR within three years after he "discovers" the

---

**8.** At the time this court decided *Erickson v. United States*, 1 Cl.Ct. 163 (1983), it did not have the benefit of the Federal Circuit's lucid construction of the conclusory and ambiguous language in *Riley*. In the light shed by the Federal Circuit, the approach subsequently taken appears the better choice.

error or injustice—*receipt* of the OER (on May 11, 1979) is discovery and inasmuch as the filing with said board was not until September 10, 1982, it was outside of the statutory period. Said board gives absolutely no factual rationale for this ultimate determination other than that plaintiff allegedly received a copy of the OER on May 11, 1979. We find this conclusion to be totally unsupported by any creditable fact' in the record and in law, as is evident, *infra.*

This court has the authority to review the ABCMR's conclusions under the Administrative Procedure Act, 5 U.S.C. § 706, which provides that: "The reviewing court shall ... (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; ..." Under this standard, we find the conclusion of the ABCMR, regarding timeliness of plaintiff's appeal to the ABCMR, not to be in accordance with law because the applicable regulations concerning appeal to the ABCMR require the *prior* exhaustion of administrative remedies. Specifically, the regulations promulgated to establish the procedures for appealing to the ABCMR *require* that the applicant "exhaust[ ] all effective administrative remedies afforded him/her by existing law or regulations ..." before the ABCMR will consider an application. Army Board for Correction of Military Records, AR No. 15–185 ¶ 8. The SRB certainly qualifies as an "effective administrative remedy afforded [plaintiff] by existing ... regulations." Moreover, we note that AR 623–105, ¶ 8–3d, relating to appeals to the SRB, provides that "[t]he above time limitations do not preclude an application to the Army Board for Correction of Military Records under the provisions of AR 15–185." In the case under consideration, only approximately one month elapsed after plaintiff received the final SRB decision (August 3, 1982) before he appealed to the ABCMR (September 10, 1982). Given the foregoing statutory and

regulatory provisions, this court does not find the time necessary to obtain an administrative decision from the SRB and to subsequently appeal to the ABCMR to be untimely given the ABCMR's own *requirement* of exhaustion of all effective administrative remedies.

Furthermore, the policies underlying the creation of the ABCMR are consistent with the requirement of exhaustion of other administrative remedies *prior* to appealing to the ABCMR. Congress created the ABCMR by statute in 1946 to alleviate the backlog of requests for private bills to correct injustices to individual servicemen. 10 U.S.C. § 1552; *see also Sherengos v. Seamans,* 449 F.2d 333 (4th Cir.1971) (Air Force Board for Correction of Military Records refused to consider serviceman's application due to non-compliance with regulation requiring other administrative remedies to be exhausted). The statute created a "civilian administrative body of *last resort*" to assist aggrieved servicemen. *Sherengos,* 449 F.2d at 334 (emphasis added). As an agency of last resort, the ABCMR was not intended to act on all claims of first instance but rather to *review* the decisions of the specialized military review boards:

> Located as it is at the apex of a pyramidal system of specialized boards of review, the Board for Correction of Military Records cannot function effectively if the specialized military boards are bypassed and it is used as a forum for presenting complaints in the first instance.

*Sherengos,* 449 F.2d at 334. Therefore, on the foregoing facts, the court finds that the ABCMR erred in concluding, as a matter of law, that plaintiff's appeal was untimely.

■ Finally, the finding of untimeliness is moot for laches purposes since, in the Memorandum of Consideration, the ABCMR apparently accepted plaintiff's appeal,[9] examined the merits thereof, and denied relief because he "failed to ... submit sufficient relevant evidence to demonstrate

---

**9.** 10 U.S.C. § 1552(b) gives the ABCMR discretion to accept an untimely appeal to further the

interests of justice.

the existence of probable material error or injustice...." Consequently, despite the arbitrary conclusion that plaintiff's appeal was untimely, the ABCMR exercised its discretion to *review* the challenged OER, the comments of the rating officials and the supporting documentation submitted by plaintiff. Since the ABCMR apparently accepted and reviewed plaintiff's appeal on the merits, this court finds plaintiff's appeal to the ABCMR to be timely for purposes of determining the commencement of the laches period under the doctrine of *Riley, supra.* Therefore, the time preceding his appeal to the ABCMR will not be counted against plaintiff for the purposes of laches.

On the unique facts at bar, the court does not find delay, nor unreasonable and inexcusable delay, on the part of plaintiff in the time period *prior* to his appeal to the SRB nor to his appeal to the ABMCR. Defendant has failed to establish said elements in that it failed to provide the court with the date(s) of plaintiff's first and second temporary passover(s) for the purpose of imputing notice to plaintiff to commence the laches period. Finally, the acceptance by the SRB of plaintiff's appeal negates laches for any subsequent timely appeals, such as the appeal to the ABCMR. Consequently, defendant fails to bear its burden in demonstrating that the time that elapsed prior to plaintiff's SRB appeal and the elapsed time from the date of the OER to the ABCMR appeal constituted laches.

The court will now proceed to analyze defendant's second contention—that the period after plaintiff's discharge and prior to his filing in this court constituted laches.

### C. *Alleged Inexcusability and Unreasonable Delay in Filing Suit in Claims Court (October 1, 1983 to July 6, 1986)*

■ With regard to the existence of laches during the subject interval, defendant asserts that the period of two years and nine months, following plaintiff's discharge but prior to his bringing suit in this court, is unreasonable. Further, the government advances the position that the appeal to the ABCMR is a permissive remedy and, as such, does not preclude recourse to this court. Thus, it concludes, if the time involved was inexcusable and unreasonable, the court may consider it in determining whether to apply laches. This argument fails because it is the policy of the court to encourage recourse to permissive administrative remedies. The predecessor Court of Claims clearly articulated this policy in *Cason* when it stated: "We think that in military cases it would be improper and *erroneous* for us to apply laches in a way that would spur the commencement of suit as soon as discharges become final, before the results of seeking administrative relief are known." *Cason,* 200 Ct.Cl. at 432, 471 F.2d at 1230 (emphasis added).

■ This court makes the distinction, however, between the time spent actively pursuing administrative remedies and the time elapsing between the final board decision and the initiation of court action. While even though the time plaintiff spent pursuing effective administrative remedies will not be charged against him for the purposes of determining the commencement of laches, the time between the final board decision and plaintiff's bringing suit will be counted for determining laches. *See Crispino v. United States,* 3 Cl.Ct. 306, 311 (1983). In *Crispino,* the plaintiff waited 21 months before bringing suit after he received the final decision of the Board for Correction of Naval Records. The court found this delay after the exhaustion of his administrative remedy unreasonable. *Id.* at 311. That scenario is not this case.

■ With this distinction in mind, the court will follow the policy of encouraging the exhaustion of permissive administrative remedies by examining the period from the final administrative decision, as opposed to the discharge date, to the filing with the court for laches purposes in the instant case. In this regard, defendant contends that notice of the ABCMR's decision was sent to plaintiff on January 17, 1984. Therefore, under this scenario, avers defendant, 30 months elapsed (January 17, 1984 to July 7, 1986) before plaintiff

brought suit in this court. As in *Crispino*, this delay would be unreasonable if the facts were as defendant portends. However, defendant provides no probative evidence of mailing the decision by the ABCMR or of receipt of same by plaintiff on or about January 17, 1984. The court finds that defendant fails in its burden of showing that plaintiff had knowledge of the final decision by the ABCMR on or about January 17, 1984, or any other specific date prior to July 7, 1986. "Argument in brief does not substitute for an affidavit." *Park v. United States*, 10 Cl.Ct. 790, 792 (1986) (delay caused by pursuit of administrative remedy through ABCMR excused).

▮ Viewing the facts in the light most favorable to plaintiff, and due to defendant's failure of proof, this court finds that plaintiff did not receive notice of the ABCMR *final* decision in his case until he received a copy of the decision from defendant on or about August 5, 1986. Plaintiff has substantiated his position by providing his own affidavit, as well as the affidavits of his former law partners, that he did not receive notice of the final decision from the ABCMR. Additionally, plaintiff has submitted a letter from the ABCMR dated October 22, 1984 (10 months after the date that defendant alleges the ABCMR sent a copy of the final decision to plaintiff), informing him that his case was completed and "forwarded to the US Army Reserve Components Personnel and Administration Center (RCPAC) for finalization." Plaintiff contends that he heard nothing further from either the ABCMR or the RCPAC after this letter. Further corroboration of his non-receipt is plaintiff's institution of a new appeal with the ABCMR in July of 1986 in the belief that his prior case had been misplaced. The court therefore finds, from the above, that until defendant forwarded a copy of the final ABCMR decision to him on August 5, 1986, plaintiff was unaware of the resolution of his ABCMR appeal. Therefore, the laches period would not commence against plaintiff during the period prior to the time he brought suit in this court, *i.e.*, during the pendency of the ABCMR administrative review, since laches would run only from the date of a *final* determination of the ABCMR that was received by plaintiff. Here there could be no unreasonable delay because plaintiff was unaware of the final decision until *after* he brought suit in this court. Again, defendant fails to carry its burden of showing inexcusable and unreasonable delay for the period prior to plaintiff's initiation of suit in this court.

## VI. *Conclusion*

Defendant failed to carry its burden of showing unreasonable and inexcusable delay for both the period prior to plaintiff's appeal to the SRB and the period prior to plaintiff's filing in this court. Since defendant has failed to show inexcusable and unreasonable delay, the court finds it unnecessary to examine the presence of prejudice to the government. The court, therefore, denies defendant's motion for summary judgment and will proceed to review the administrative record for a *Sanders*-type review.

IT IS HEREBY ORDERED that defendant's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that the parties file cross-motions for summary judgment based on the administrative record of the ABCMR.[10] Plaintiff's motion shall be filed on or about November 6, 1987, defendant's cross-motion shall be filed on or before December 7, 1987, plaintiff's response shall be filed on or before January 7, 1988, and defendant's reply shall be filed on or before January 25, 1988.

---

**10.** On September 15, 1987, the court directed defendant to file, on or before October 5, 1987, plaintiff's administrative record before the ABCMR.