**ENERGY CAPITAL CORP., as General Partner of Energy Capital Partners Limited Partnership Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–293 C.

United States Court of Federal Claims.

July 25, 2000.

appeal." *Glitsch, Inc. v. Koch Engineering Co., Inc.*, 216 F.3d 1382 (Fed.Cir.2000).

Michael S. Gardener, Boston, MA, counsel of record for plaintiff. R. Robert Popeo,

6. *See* Slavitt, *supra*, at 140 (describing the role of precedent in clarifying the law).

Beth I.Z. Boland, and Laurence A. Schoen, Boston, MA, of counsel.

Mark. L. Josephs, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant, with whom were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Jeffrey A. Belkin and Allison A. Page, of counsel. Carole W. Wilson, Angelo Aiosa, and Kathleen Burtschi, Department of Housing and Urban Development, of counsel.

## OPINION

DAMICH, Judge.

Before filing a petition for attorneys' fees under Rule 81(e) of the Court of Federal Claims, the Plaintiff has requested permission to have discovery on its entitlement to attorneys' fees under the Equal Access to Justice Act (EAJA). The Plaintiff's request raises an issue of interpretation of the Federal Circuit's mandamus order of December 8, 1999,[1] which stated that "testimony" on this topic is premature. Since the Court interprets the word "testimony" in the Federal Circuit's mandamus order to mean *all* testimony—depositions as well as trial testimony—this Court is compelled to follow the dictates of the Federal Circuit and consequently denies the Plaintiff's motion to open discovery. The Plaintiff, however, will be permitted to present all evidence relevant to its claim for attorneys' fees at the appropriate time, which is after the Plaintiff files an application for attorneys' fees pursuant to Rule 81(e).

## I. Facts

### A. Actions before the complaint was filed

The Plaintiff, Energy Capital Corp., entered into a contract with the Defendant, the United States, acting through the Depart-ment of Housing and Urban Development (HUD). Under the contract, called the AHELP agreement, the Plaintiff promised to finance low-interest loans to renovate some types of HUD housing. Section 9.1 of the AHELP agreement provided that the government could terminate the contract only if the Plaintiff defaulted and failed to cure the default within 30 days. The contract did not have a clause permitting the government to terminate for its convenience.

On February 7, 1997, *The Wall Street Journal* published a front-page story that suggested the Plaintiff received the contract as a reward for political fund-raising by its principals on behalf of President Clinton. According to the Plaintiff, this article was false and officials at HUD, including Nicolas Retsinas, former Assistant Secretary of HUD, and Andrew Cuomo, Secretary of HUD, knew it was false at the time of publication. The Defendant has not challenged the Plaintiff's representations about the article's falsity and the Defendant's scienter. *The Wall Street Journal* later qualified the story.

According to the Plaintiff, Secretary Cuomo directed HUD to terminate the AHELP agreement. The basis of this allegation is that Secretary Cuomo told Alan Leventhal, a principal of Energy Capital, that " 'I [Cuomo] took control' of the situation created by *The Wall Street Journal* article regarding AHELP." The Plaintiff alleges that the ostensible motive for Cuomo's action was to avoid an investigation into possible unethical behavior and political favoritism by Cuomo. At Secretary Cuomo's instruction, HUD, acting through Retsinas, terminated the AHELP agreement.[2]

---

1. "In this case, no final judgment has been entered. Thus, testimony on matters relating to a request for attorney fees, including any testimony from Secretary Cuomo, is premature." *In re United States*, Misc. Docket No. 600, slip op. at 2, 1999 WL 1270955 (Fed.Cir. Dec. 8, 1999).

2. To say the Defendant disputes this characterization understates the vigor with which the Defendant opposes the Plaintiff on these points. As the record now stands, the Court has limited information as to the Defendant's position.

The Court specifically instructed the parties on September 29, 1999, to file a brief addressing the legal issue of what constitutes bad faith. The Court specifically instructed the parties to assume that the Plaintiff's allegations were true. The Court limited its order to the legal issue to determine whether the Plaintiff's allegations were legally relevant. If the Court held that the Plaintiff's allegations of misconduct—even if true—did not meet the legal definition of "bad faith," then the factual dispute over the allegations would be irrelevant.

The Court emphasizes that in making its rulings, it has *assumed* the truth of the Plaintiff's allegations. Of course, the Plaintiff must prove the truth of its allegations at trial. The ultimate decision of whether the Plaintiff is entitled to a

## B. Actions after litigation was filed

The Plaintiff initiated litigation by filing a complaint on April 21, 1997. A corrected first amended complaint was filed on January 7, 1998. It contained two counts. The first count was a breach of contract; the second count alleged several constitutional violations: takings, Equal Protection and First Amendment.

On February 3, 1998, the Defendant filed a motion to stay the proceedings until a criminal prosecution was completed or declined. On February 6, 1998, the Plaintiff filed a motion to seal the February 3rd motion. Also, on February 6, 1998, the Defendant filed a motion to withdraw the February 3rd motion. On February 11, 1998, the Court granted the Defendant's motion to withdraw the February 3rd motion.[3]

On March 19, 1998, the Defendant answered the complaint. The answer contained two paragraphs under the heading Affirmative Defenses. In the first paragraph, the Defendant asserted the AHELP agreement was unenforceable because HUD lacked the statutory authority to enter into the agreement. The second paragraph stated: "Defendant reserves the right to assert a defense relating to circumstances which may have adversely affected the public's confidence in the integrity of the procurement process."

On November 10, 1998, the Plaintiff served a notice of deposition and subpoena for the deposition of Secretary Cuomo. The Defendant filed a motion to quash the subpoena and for a protective order. Briefing followed. In the Plaintiff's first brief, the Plaintiff maintained that the deposition of Cuomo was necessary because he had personal information relating to the circumstances of the termination of the AHELP agreement. The Plaintiff also requested to question Cuomo about an alleged telephone call between Leventhal and Cuomo.[4]

While briefing was being completed on the motion to quash, the Defendant filed a motion to concede liability as to Count One, the breach of contract claim, on February 12, 1999. The Defendant also renewed a motion to dismiss Count Two, the constitutional count. After the motion to concede liability was filed by the Defendant, the Plaintiff filed, by leave of Court, a supplemental brief on the motion to quash.

The Court heard oral argument on several outstanding motions on April 15, 1999. The Court granted the Defendant's motion to concede liability, which unsurprisingly was not opposed. The Court also stayed proceedings on Count Two, rather than dismiss Count Two.

During the argument on the motion to quash, the Plaintiff focused on Cuomo's knowledge of the damages the Plaintiff suffered. Significantly, the Plaintiff did not discuss bad faith and did not suggest that Cuomo's testimony would be relevant to attorneys' fees under EAJA. The Court, subsequently, granted the motion to quash the subpoena and imposed a protective order precluding Cuomo's deposition. In doing so, the Court examined whether Cuomo's testimony on ordinary damages for breach of contract—which was the sole issue at that time—warranted the "exceptional circumstances" required to depose a senior government official. The Court found it did not.

## C. Events leading to the Court of Federal Claim's Order compelling Cuomo and Glaser to testify.

The case continued toward trial. In its pretrial filings, required by Appendix G of the Rules of the Court of Federal Claims, the Plaintiff indicated that it intended to seek attorneys' fees pursuant to EAJA. The Plaintiff pointed to the following acts: (1) Cuomo's decision to terminate the AHELP agreement to avoid the political conse-

finding of bad faith by the government will be made after the petition for attorneys' fees is filed.

3. Accordingly, the Clerk's Office returned all copies of the February 3, 1998 motion. In addition, because the current judge was not assigned to this case until recently, the undersigned judge has never reviewed the motion to stay. The

judge is aware that the motion to stay was based on a possible criminal violation only because of how the motion is docketed on the record in the Clerk's Office.

4. In this telephone call, Leventhal alleges that Cuomo threatened his company.

quences of *The Wall Street Journal* article, (2) HUD's forcing the Plaintiff to bring this lawsuit to vindicate a known legal right, (3) Cuomo's threatening phone call to Leventhal, and (4) Howard Glaser's threat to file a false pleading.[5] The pretrial filings also indicated that the Plaintiff intended to call Cuomo and Glaser as witnesses.

The Defendant responded to the request for attorneys' fees. The Defendant filed a motion to exclude any testimony relating to attorneys' fees at the hearing in damages and a motion for protective order to preclude the testimony of Cuomo and Glaser.

After additional briefing and argument, the Court determined that the Plaintiff could present evidence relating to its entitlement to attorneys' fees. This unpublished decision concerned the correct *procedure*. Although the Defendant had conceded liability, its conduct in terminating the contract was relevant to the Plaintiff's entitlement to attorneys' fees. The Court was concerned about the argument that, according to the legislative history of EAJA, the Plaintiff in the hearing on attorneys' fees would be confined to the evidence that had been adduced at trial. The Defendant would not concede that the Plaintiff would be permitted to introduce "new" evidence at a hearing on attorneys' fees. The Court permitted the Plaintiff to make a full record to avoid a situation in which the Plaintiff was denied all opportunities to present evidence relating to its entitlement to attorneys' fees. Accordingly, the Court denied the Defendant's motion to exclude any testimony relating to attorneys' fees.

Before ruling on the motion for protective order on Cuomo and Glaser, the Court requested additional briefs on what acts entitle a prevailing party to attorneys' fees. The Court instructed the parties to assume the Plaintiff's allegations were true. The Court

was seeking to resolve the *legal* issue. The Court determined that if the Plaintiff's allegations were true, then the Plaintiff would be entitled to attorneys' fees under the misconduct prong of EAJA.[6] The Court, thereafter, denied the Defendant's pending motion for protective order regarding Cuomo and Glaser. The Court ruled that "exceptional circumstances" were present so that Cuomo and Glaser could be compelled to testify.

One reason for finding "exceptional circumstances" was the telephone call made by Cuomo to Leventhal. Leventhal, a principal in Energy Capital, alleges that Cuomo threatened adverse consequences for Energy Capital if Energy Capital did not drop the present lawsuit. The Court determined that this allegation, if proven, was relevant to determining whether the government acted in "bad faith," subjecting the government to liability for attorneys' fees under EAJA. Furthermore, since the truth of the content of the telephone call was likely to turn on the credibility of the witnesses, the Court felt that it had to observe their demeanor. Thus, Energy Capital could call Cuomo to testify to his recollection of this phone call.

The Court maintained its ruling that Cuomo, personally, had to testify even after the United States submitted a motion for reconsideration. In its *motion*, the United States offered for the first time that Glaser could testify in lieu of Cuomo because Glaser, by apparent coincidence, overheard Cuomo talking to Leventhal. This unexpected proffer of a witness who was entirely within the government's control, after the Cuomo–Leventhal phone call had been extensively discussed, astonished the Plaintiff and the Court. After considering this revelation, the Court still required Cuomo to testify because he was the only person, besides Leventhal,

---

**5.** Specifically, the Plaintiff alleges:

Shortly after this action was commenced, HUD's General Counsel, Howard Glaser, contacted plaintiff's counsel. He threatened to file a pleading that would falsely raise the specter of a criminal investigation of ECP and its principals and suggested that plaintiff should consider the ramifications of publicity resulting from such an answer in deciding whether to proceed with the litigation. Mr. Glaser then

took steps to "dig up dirt" on ECP and its principals.
Plaintiff's Proposed Finding of Fact 177.

**6.** If the Court had held that the Plaintiff's allegations, even if true, did not establish the factual predicate necessary to award attorneys' fees, then the factual dispute would be irrelevant. Therefore, Cuomo and Glaser would not have to testify. As indicated in the opinion, the Court did not decide this issue in this way.

that heard both parts of the conversation. Cuomo's personal involvement, which could not be replicated by any other person, warranted the "exceptional circumstances" such that his testimony was required on the bad faith issue.

### D. Petition for Mandamus and Action by the Federal Circuit

Once the Court denied its motion for protective order and its motion for reconsideration, the United States petitioned for a writ of mandamus from the Federal Circuit. The thrust of the petition for mandamus was that the Court wrongly determined that "exceptional circumstances," sufficient to warrant the compelled testimony of Cuomo,[7] were present. In a footnote, the petition for mandamus argued that all testimony relating to Energy Capital's entitlement for attorneys' fees was premature according to Rule 81(e)(3). The opposition brief, likewise, focused on the "exceptional circumstance" test and addressed Rule 81(e)(3) in a footnote.

The Federal Circuit resolved the case on the basis of the arguments in the footnotes. In an unpublished decision, the Federal Circuit granted the petition for mandamus, citing Rule 81(e)(3), and stating: "In this case, no final judgment has been entered. Thus, testimony on matters relating to a request for attorney fees, including any testimony from Secretary Cuomo, is premature." *In re United States*, Misc. Docket No. 600, slip op. at 2, 1999 WL 1270955 (Fed.Cir. Dec. 8, 1999). But the Federal Circuit added in a footnote: "We express no view on whether it would be proper to require Secretary Cuomo to testify on attorney fees." *In re United States*, Misc. Docket No. 600, slip op. at 2, n. 2, 1999 WL 1270955 (Fed.Cir. Dec. 8, 1999). Hence, the decision on mandamus did not answer the question of whether "exceptional circumstances" were present.

### E. Actions and Pending Motion at the Court of Federal Claims

Upon receipt of the mandamus, this Court vacated its order regarding the testimony of Cuomo and Glaser. Thereafter, the Court received evidence in the hearing in damages without the testimony of any person on the Plaintiff's entitlement to attorneys' fees.

After the close of evidence, the Plaintiff filed a motion for leave to open discovery on its entitlement to attorneys' fees. The Plaintiff contends that because the Federal Circuit has ruled it cannot file its application for attorneys' fees until after final judgment and because a long time may pass before final judgment, the Plaintiff would be prejudiced if it were denied the opportunity to preserve the evidence relevant to its eventual and inevitable petition for attorneys' fees. Further, the Plaintiff argues that the Federal Circuit has not forestalled all testimony, just testimony at trial.

The Plaintiff uses the following reasoning to support its claim of prejudice. Specifically, the Plaintiff fears that between now and when its application is filed, the government witnesses may forget the details of the events that form the basis for the entitlement to attorneys' fees. The Plaintiff, correctly, notes that it has a high burden of proof to prove its allegation that a government official acted in bad faith. *Torncello v. United States*, 231 Ct.Cl. 20, 45, 681 F.2d 756, 770 (1982). Because of the high burden of proof, the Plaintiff believes that it must be able to counter convincingly the position of the government officials. The Plaintiff perceives itself as being in a "Catch 22" situation in that the law requires it to present convincing evidence of misconduct, but the law simultaneously denies the Plaintiff the opportunity to gather this evidence.

The Plaintiff's solution is to have a stage of discovery, focused on entitlement to attorneys' fees, now. During this phase of discovery, if permitted, both parties would depose potential witnesses about the Plaintiff's entitlement to attorneys' fees. As part of its request, the Plaintiff indicated that it would like to depose Cuomo and Glaser.

According to the Plaintiff, the Federal Circuit's mandamus ruling is not an obstacle. In saying "testimony . . . is premature," the Federal Circuit was referring only to *trial* testimony. The Federal Circuit did not con-

---

7. The petition for mandamus was not directed to Glaser's testimony.

sider whether deposition testimony was appropriate because that issue was not presented to the Federal Circuit. Further, the Federal Circuit relied on Rule 81, which contemplates a presentation of evidence to the trial court. In contrast, a deposition would not be presented to the trial court, if at all, until after the petition for attorneys' fees was filed. Thus, according to the Plaintiff, this Court may open discovery and may order Cuomo and Glaser to testify without violating the mandamus order.

The Defendant opposes the Plaintiff's motion to open discovery. The Defendant argues that when the Federal Circuit stated that "testimony" is premature, "testimony" means all testimony regardless of whether the testimony is given at a deposition or at trial. The Defendant also argues that there is no reason, such as sickness or age, to preserve the testimony of anyone at this time.

## II. Decision

### A. Introduction

The Plaintiff's motion raises two issues: (1) whether at a Rule 81(e)(3) hearing Plaintiff may present evidence relevant to attorneys' fees under EAJA that has not been introduced previously at the damages trial, and (2) if such evidence may be introduced, when should discovery be conducted? These two issues are resolved after a preliminary discussion about Rule 81(e).

### B. Rule 81(e)

Rule 81(e) governs the procedure for seeking attorneys' fees at the Court of Federal Claims when those attorneys' fees are a separate component of damages.[8] Rule 81(e) of the Rules of the Court of Federal Claims has no counterpart in the Rules of Federal Civil Procedure; therefore, it is set out in full in the footnote.[9]

The procedure prescribed by the rule is not always clear. When the primary issue is either the amount of attorneys' fees or the Plaintiff's entitlement to attorneys' fees under EAJA, Section 2412(d), which is discussed in detail in the following section, the steps are well marked. In contrast, when a primary issue is the Plaintiff's entitlement to attorneys' fees under Section 2412(b), the rule is not as clear.

The rule begins with the requirement that the application for attorneys' fees must be filed within 30 days of final judgment. Rule 81(e)(1). After the application is filed, there is time for an opposition brief and for a reply brief. Rule 81(e)(2). When the briefing is completed, the court may establish the procedure for ruling on the application. Rule 81(e)(3). This decision addresses, in part, whether the application and responsive briefing are prerequisites to this court's authority to establish procedures for an anticipated application.

According to the Court's research, Rule 81(e) is unique within the Federal court system in that it bifurcates an evidentiary hearing on entitlement to attorneys' fees from an evidentiary hearing on the merits of the case.

8. Rule 37 permits the Court of Federal Claims to sanction a party for abuses during discovery. These sanctions may include attorneys' fees. *M.A. Mortenson Co. v. United States*, 996 F.2d 1177 (Fed.Cir.1993).

9. Rule 81(e) Application for Attorneys' Fees and Expenses. (1) *Applications.* Applications for fees and expenses shall be filed with the clerk within 30 days after final judgment, as defined in 28 U.S.C. § 2412(d)(2)(G) for the payment of money, or for the dismissal of the complaint, or of a final order in a renegotiation case determining the amount, if any, of excessive profits, or of a declaratory judgment pursuant to 28 U.S.C. §§ 1491 or 1507. Any application subject to 28 U.S.C. § 2412(d) shall include the information required by that section and any claim for fees

and expenses incurred in the prosecution of the application, and shall include the completed form as shown in Appendix E to these rules. The application and supporting statements shall be under oath. Each item shall be separately stated and supported.

(2) *Response and Reply.* The responding party shall have 28 days from the service of an application pursuant to subdivision (e)(1) of this rule to file a response, to which plaintiff may reply within 14 days after service of the response.

(3) *Proceedings.* After the filing of an application, and response and reply, if any, the judge will enter an order prescribing the procedure to be followed, either specially or pursuant to the rules of the court, or take such other action as may be deemed appropriate.

Under Rule 81(e), as interpreted by the Federal Circuit in its mandamus ruling, the Court of Federal Claims cannot receive "testimony" about *entitlement* to attorneys' fees until after an application for attorneys' fees is filed, even, as in this case, where the Defendant has conceded liability and the Plaintiff has indicated that it will seek attorneys' fees. Therefore, Rule 81(e) requires a hearing, devoted exclusively to attorneys' fees. (Accordingly, the remainder of this opinion uses the term "attorneys' fees hearing" to denote this type of hearing, which necessarily differs from a hearing on the merits of a case.)

Many district courts have adopted local rules to govern how applications for attorneys' fees are resolved. These local rules are not analogous to Rule 81(e) because the local rules do not create a separate proceeding for entitlement to attorneys' fees.[10]

Accordingly, there is little precedent for resolving questions about Rule 81(e).

### C. Scope of an attorneys' fees hearing under Rule 81(e)(3)

The Court resolves the first issue, whether Plaintiffs may introduce testimony relating solely to its entitlement to attorneys' fees at a hearing on attorneys' fees pursuant to Rule 81(e)(3), in the Plaintiff's favor. The Court discusses this issue because the Defendant suggested that the attorneys' fees hearing must be limited to evidence produced at a hearing in damages.

Because the Defendant conceded liability, the Plaintiff has already indicated that it will file an application for attorneys' fees. It has also indicated that it will file pursuant to EAJA, Section 2412(b), not under Section 2412(d), for which it does not qualify.[11] This difference has significant consequences, because the scope of a hearing for a proceeding under Section 2412(d) differs from the scope of a hearing under Section 2412(b).

The scope of discovery for a proceeding under Section 2412(d) differs from one under Section 2412(b). The different language for the two different parts express this difference quite clearly. Whether a party is entitled to attorneys' fees under Section 2412(d) is determined by examining "the record ... which is made in the civil action." 28 U.S.C. § 2412(d). By this restriction, Congress has instructed trial courts to look for evidence exclusively in the record at trial.

■ In contrast, Congress has not so restricted the evidence in a proceeding under Section 2412(b).[12] "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17, 24 (1983). *See also American Fed. of Gov't Employees, AFL–CIO v. United States*, 46 Fed.Cl. 586, 598 (2000) (quoting same). Accordingly, the

---

**10.** *But see Loc. R. Civ. Proc. (D.Or.) Rule 54.4(c)* (stating "Unless otherwise directed by the court, any hearing on the motion for attorneys' fees will be heard by the court without: (1) segregating the issue of liability for attorneys' fees from the issue of the amount of fees.")

**11.** In general, only non-wealthy individuals and businesses may seek attorneys' fees under Section 2412(d). The statute states: " 'party' means ... (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B).

Energy Capital indicates that it does not meet this definition.

**12.** Congress amended Section 2412(d) in 1985. Act of August 5, 1985, Pub.L. No. 99–80, sec.

2(b), 99 Stat. 183, 184–85 (1985). As part of this amendment process, Public Law 99–80, sec. 2(b) added that portion of Section 2412(d)(1)(B) that states: "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." *Id.* The legislative history of this amendment shows that Congress wanted to "limit discovery in EAJA fee proceedings." The committee report also states that entitlement to attorneys' fees would not involve "additional evidentiary proceedings or additional discovery of agency files, solely for EAJA purposes." H.R.Rep. No. 99–120, pt. 1, at 7, 13 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 135, 141–42.

limitation in Section 2412(d) is not implied into Section 2412(b). A court can consider any relevant evidence in a hearing under Section 2412(b).

Although this examination of the text of the statute, by itself, sustains the Court's ruling that the parties may introduce new evidence at the attorneys' fees hearing, three other authorities reinforce it. First, Congress expressly stated that its amendments to Section 2412(d) do not modify Section 2412(b). *See* H.R.Rep. No. 99–120, pt. 1, at 4 n. 2, (1985), *reprinted in* 1985 U.S.C.C.A.N. 132 n. 2 ("Portions of the Act, including 28 U.S.C. §§ 2412(a), (b), and (c) are permanent law, and are not affected by H.R. 2378"). This statement of Congressional intent is powerful evidence that a hearing on Section 2412(b) is not limited to the evidence at trial.

The Federal Circuit's decision on the petition for mandamus supports this view. In ruling that any testimony before final judgment was "premature," the Federal Circuit implicitly stated that the testimony about entitlement to attorneys' fees would be ripe at some time in the future, i.e., at the attorneys' fees hearing.

Finally, persuasive precedents, from different contexts, also support the Court's belief that all relevant evidence may be introduced at the attorneys' fees hearing. Taxpayers may seek attorneys' fees, pursuant to 26 U.S.C. § 7430, when the litigation position of the Internal Revenue Service is "substantially justified," language that is the same as petitions for attorneys' fees under 28 U.S.C. § 2412(d). *See* 26 U.S.C. § 7430(c)(4)(A)(ii) (referring to 28 U.S.C. § 2412(d)(1)(B)). Even in this context, an evidentiary hearing is necessary when the factual record is unclear. "As several courts have observed, an evidentiary hearing is generally preferred, if not required, when factual disputes exist in connection with a request for attorney fees and costs and those disputes cannot be resolved without a hearing." *Michael A. Cramer, MAI, SRPA, Inc. v. United States,* 47 F.3d 379, 383 (10th Cir.1995) (citing cases). In *Michael A. Cramer,* the Tenth Circuit remanded the case to the trial court to conduct further proceedings to determine whether the position of the United States was "substantially justified."

In sum, the Court's view that a hearing on attorneys' fees is not limited to the evidence presented during the main case is supported by (1) the express statement by Congress that its amendment to Section 2412(d) does not affect Section 2412(b), (2) the implication of the Federal Circuit's mandamus, and (3) persuasive cases.

The Defendant does not disagree with the position taken by the Court. The Defendant represented that it does not contest the Plaintiff's right to present evidence to qualify for attorneys' fees under Section 2412(b) at a hearing under Rule 81(e)(3). Although the Defendant agrees with this general principle, the Defendant qualifies its agreement in two respects.

First, the Defendant believes that it can object to the introduction of evidence. For example, to anticipate the Defendant's argument, the Defendant will contend that because "extraordinary circumstances" are not present, the Court cannot compel Cuomo and/or Glaser to testify. As indicated in the factual section of this decision, the Court ruled in October 1999 that "extraordinary circumstances" were present to force the testimony of Cuomo and/or Glaser. What circumstances will be if this issue is again presented to this Court are impossible to predict.

Accordingly, the present ruling does not impair in any respect the Defendant's right to challenge the admissibility of evidence on grounds other than a view that a hearing cannot have "new" evidence.

The Defendant's second qualification is that the evidence at a hearing under Rule 81(e)(3) should be as limited as possible. The Defendant bases this argument on the public policy, expressed by Congress when it amended Section 2412(d), that hearings on attorneys' fees should not expand into major litigation. For reasons stated above, the Court cannot read the restrictions from Section 2412(d) into Section 2412(b). If Congress had wanted to limit proceedings under Section 2412(b), it would have.

On a more general level, the Court agrees that hearings under Rule 81(e)(3) should be as limited as possible. All court proceedings should have evidence that is relevant but not cumulative. *See* Fed.R.Evid. 403. This principle also governs hearings on attorneys' fees.

Accordingly, the hearing on entitlement to attorneys' fees under Section 2412(b) is not limited to the record created during the hearing in damages. Both parties may present evidence that relates only to the Plaintiff's entitlement (or lack of entitlement) to attorneys' fees.

### D. Timing of Discovery about Entitlement to Attorneys' Fees

■ Although new evidence relevant to attorneys' fees may be introduced at the attorneys' fees hearing, the issue of when discovery may be conducted remains. This issue depends on the Court's interpretation of the Federal Circuit's order.

The Court interprets the Federal Circuit's ruling on mandamus as it is written: "testimony on matters relating to a request for attorney fees ... is premature." The Federal Circuit did not qualify its statement that "testimony" means only trial testimony. Although the context of the mandamus was trial testimony, without some indication from the Federal Circuit that its order was limited to that context, the Court believes that permitting deposition testimony about attorneys' fees would circumvent the ruling of the Federal Circuit.

The Plaintiff, unfortunately, may be prejudiced by the delay in deposing witnesses whose testimony is exclusively relevant to the Plaintiff's entitlement to attorneys' fees. This delay comes from the orderly administration of litigation. The testimony of these witnesses will be relevant only after the Plaintiff files its request for attorneys' fees under Rule 81(e). Until this petition is filed, their testimony does not pertain to an issue in the case.

Courts are aware that the passage of time can interfere with the preservation of (and presentation of) facts. *Brundage v. United States*, 205 Ct.Cl. 502, 510, 504 F.2d 1382, 1387 (1974); *Erickson v. United States*, 1 Cl.Ct. 163, 165 (1983). Over the passage of time, witnesses can become unavailable and memories can fade. *Id.*

The potential for prejudice depends on the length of time between now and final judgment. When a judgment will be final depends on the appeal process.[13] The appeal process has the potential to lengthen the duration of this litigation considerably.[14]

On the other hand, the appeal process offers an opportunity to shorten the intervening period before the parties can conduct discovery. After the case is appealed, the parties could raise this issue to the Federal Circuit. The Federal Circuit could offer guidance on this issue and review whether this Court's interpretation of the mandamus ruling is correct.

To the Court's knowledge, the Federal Circuit's decision on the mandamus petition is the only decision discussing the procedure under Rule 81(e). That decision, however, was not published and is not binding anywhere but in this litigation. *See* Fed. Cir. R. 47.6. This Court's decision, although published, is also not binding as precedent. This Court chooses to publish the present decision to inform the legal community of one procedure under Rule 81(e) that is faithful to the Federal Circuit's order on the petition for mandamus, namely the bifurcation of evidentiary hearings on the merits of the case from

---

**13.** The Court expects at least one party will appeal, regardless of the Court's decision on the merits.

**14.** Some cases move between the Court of Federal Claims and the Federal Circuit (and even the Supreme Court) multiple times before a "final" judgment is reached. *See, e.g., Gargoyles v. United States*, 113 F.3d 1572 (Fed.Cir.1997) (affirming award of damages in a patent case where the complaint was filed in 1988), *later proceeding*, 45 Fed.Cl. 139, 144 (2000) (denying request for at-

torneys' fees); *Florida Rock Indus., Inc. v. United States*, 45 Fed.Cl. 21, 25 (1999) (finding a taking of Plaintiffs' property where the complaint was filed in 1982); *McDonnell Douglas Corp. v. United States*, 40 Fed.Cl. 529 (1998) (awarding about three and a half billion dollars for development of A–12 stealth airplane where the complaint was filed in 1991), *rev'd and remanded*, 182 F.3d 1319 (1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1831, 146 L.Ed.2d 775 (2000).

evidentiary hearings on the entitlement to attorneys' fees with discovery relating to the latter proceeding being delayed. Whether other procedures would be appropriate, absent instruction from the Federal Circuit, cannot be addressed.

## III. Conclusion

The Plaintiff's motion to open discovery relating to attorneys' fees is DENIED. The Federal Circuit has stated that testimony on this topic is premature.